ELDA M. SIDHU
General Counsel
Nevada Bar No. 7799
DEBRA L. PIERUSCHKA
Assistant General Counsel
Nevada Bar No. 10185
UNIVERSITY OF NEVADA, LAS VEGAS
4505 S. Maryland Parkway, Box 451085
Las Vegas, Nevada 89154-1085
Telephone: (702) 895-5185
Facsimile: (702) 895-5299
*Attorneys for Defendants*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| SUJANIE V.S.V. GAMAGE aka SUJANIE GAMAGE SAMARASEK,<br><br>Plaintiff,<br><br>vs.<br><br>THE STATE OF NEVADA ex rel. BOARD OF REGENTS OF THE NEVADA SYSTEM OF HIGHER EDUCATION, on behalf of THE UNIVERSITY OF NEVADA, LAS VEGAS; a Political Subdivision of the State of Nevada; VERNON HODGE, individually and in his official capacity as an employee of the University of Nevada, Las Vegas; and DOES I-XX inclusive,<br><br>Defendants. | CASE NO.: 2:12-cv-00290-GMN-VCF<br><br><br>**FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER PERTAINING TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |

Defendants the State of Nevada ex rel., its Board of Regents of the Nevada System of Higher Education, on behalf of the University of Nevada, Las Vegas ("**UNLV**" or "**University**") and Vernon Hodge, individually and in his official capacity ("**Dr. Hodge**") (collectively "UNLV" or "University" and "Dr. Hodge" are referred herein as "**Defendants**") Motion for Summary Judgment [**ECF No. 37**] came before this Court for hearing on September 17, 2013, with Michael Mascarello, Esq., appearing for Plaintiff Sujanie V.S.V. Gamage aka Sujanie Gamage Samarasek and Debra L. Pieruschka, Esq., Assistant General Counsel for the University of Nevada, Las Vegas

appearing for Defendants.  After reviewing the pleadings submitted in support of and in opposition to Defendants' Motion, having heard argument of counsel, and good cause appearing, the Court enters the following Findings of Fact and Conclusions of Law.

**FINDINGS OF FACT**

Plaintiff Sujanie V.S.V. Gamage aka Sujanie Gamage Samarasek ("**Gamage**" or "**Plaintiff**"), is a former student of UNLV's Department of Chemistry Ph.D. Program ("**Program**").  [**ECF No. 32, ¶6**].  Defendant UNLV is a public university and a state entity located in the County of Clark, State of Nevada.  Defendant Dr. Hodge is employed by UNLV as a professor in the College of Sciences, the Department of Chemistry.  [**ECF No. 31, ¶4**].

Gamage began the Program in the fall of 2006 and was subject to the Program requirements and procedures as outlined in the Graduate Catalog for the Fall of 2005 – Spring 2007 ("**Catalog**").  [**ECF No. 32, ¶8**].  The Catalog states a "[s]tudent is guilty of plagiarism, *intentional or not*, if they copy material from books, magazines, or other sources without identifying and acknowledging those sources" and if a student is found guilty of plagiarism she could receive a failing grade for the course or "*be removed from the program.*"  [**ECF No. 32, ¶10**].

As part of the Program, Gamage was required to prepare and defend a doctoral dissertation.  [**ECF No. 31, ¶4**].  To that end, Gamage selected and formed an Advisory Committee ("**Committee**") comprised of a chair and three other faculty members that were responsible for guiding her through the Program, assisting with her dissertation, and administering the her final examination.  [**ECF No. 31, ¶¶4 & 5**].  Dr. Hodge agreed to be Gamage's Committee Chair.  [**ECF No. 31, ¶5**].

Gamage began work on her dissertation at the beginning of 2010.  [**ECF No. 31, ¶6**].  Gamage sent numerous drafts of her dissertation to her Committee for review and comment throughout 2010.  [**ECF No. 31, ¶6**].  Near the end of 2010, Gamage was nearing completion of her dissertation and set her dissertation defense date for November 10, 2010.  [**ECF No. 31, ¶6**].  Gamage submitted a final draft of her dissertation to the Committee on November 2, 1010, but the next day sent a revised dissertation containing numerous corrections to a number of chapters.

1    [ECF No. 31, ¶7].  Because of these revisions to her dissertation, Gamage's dissertation defense

2    date was cancelled.  [ECF No. 31, ¶7].

3       Gamage submitted another version of her dissertation to the Committee on January 31,

4    2011 planning to defend it during the last week of February 2011.  [ECF No. 31, ¶8].  However,

5    due to the numerous revisions required by her Committee to her dissertation, Gamage was required

6    to revise it again and resubmit another version to her Committee, which she did on February 23,

7    2011.  [ECF No. 31, ¶8].  Shortly thereafter, Dr. Steinberg, one of her committee members,

8    identified a specific provision in her dissertation which he found to have been directly taken from

9    another published source; not the one cited by Gamage.  [ECF No. 31, ¶9].  Dr. Steinberg notified

10    Dr. Hodge that he had found plagiarized material in Gamage's dissertation.  [ECF No. 31, ¶9].

11       Dr. Hodge met with Gamage to discuss Dr. Steinberg's findings of plagiarized material in

12    her dissertation.  [ECF No. 31, ¶10].  After their discussion, Dr. Hodge notified Gamage that he

13    would recommend her removal from the Program for plagiarism.  [ECF No. 31, ¶10].  Gamage

14    asked Dr. Hodge for a chance to remove all the plagiarized material from her dissertation and

15    submit an error free version of her dissertation to the Committee.  [ECF No. 31, ¶10].  Dr. Hodge

16    spoke to the Committee regarding the discovery of plagiarized material in Gamage's dissertation.

17    [ECF No. 31, ¶11].  After discussing the matter, the Committee, agreed to give Gamage a chance

18    to remove all the plagiarized material from her dissertation and submit a revised dissertation to

19    them.  [ECF No. 31, ¶11].  In turn, the Committee agreed that if she removed all of the plagiarized

20    material, she could continue in the Program.  [ECF No. 31, ¶11].

21       Dr. Hodge informed Gamage of the Committee's decision to allow her to remove all the

22    plagiarized material from her dissertation and submit an unplagiarized version to them.  [ECF No.

23    31, ¶12].  Shortly thereafter, Gamage submitted a "corrected dissertation" to the Committee.

24    [ECF No. 31, ¶13].  While Dr. Hodge noted Gamage had removed certain plagiarized material

25    called to her attention, he found even more plagiarized material in her dissertation.  [ECF No. 31,

26    ¶¶13 & 14].  Dr. Hodge met Gamage's Committee to discuss the issues with her dissertation

27    including finding more plagiarized material.  [ECF No. 31, ¶15].

28       The Committee unanimously agreed that Gamage had been given an opportunity to remove

the plagiarized material from her dissertation but failed to do so; and therefore, the Committee recommended she be removed from the Program. [**ECF No. 31, ¶15**]. On April 5, 2011, Dr. Hodge informed Gamage of the Committee's decision to recommend her removal from the Program. [**ECF No. 31, ¶16**].

On June 14, 2011, Dr. Hodge notified Gamage that the Committee was proceeding with disciplinary action against her regarding her plagiarism. [**ECF No. 30, ¶19**]; *see also* [**ECF No. 33, ¶13**]. Gamage responded to Dr. Hodge admitting she had made mistakes in her dissertation but it was due to her "unawareness of the entire plagiarism policy" and profusely apologized. [**ECF No. 33, ¶14 and ECF No. 30, ¶20**]. The same day, Dr. Hodge, with the approval of Gamage's Committee, submitted an Academic Misconduct Report to the Office of Student Conduct ("**OSC**"). [**ECF No. 30, ¶21**].

The University's Student Conduct Code ("**Conduct Code**") and Academic Misconduct Policy ("**Academic Policy**"), applicable to all students, sets forth the process to follow when a student is alleged to have engaged in academic misconduct (*i.e.*, cheating, plagiarism, etc.). [**ECF No. 33, ¶7**]. Under the Misconduct Policy, the professor makes the determination as to whether the student is or is not responsible for academic misconduct. [**ECF No. 33, ¶10**]. If, as here, the professor finds the student is responsible for academic misconduct, the student then has the ability to appeal the professor's findings to the UNLV Academic Integrity Appeal Board ("**Appeal Board**"). [**ECF No. 33, ¶10**]. Pursuant to the Academic Policy, the Appeal Board's decision is final in terms of determining the responsibility for alleged academic misconduct and any recommended sanctions related thereto. [**ECF No. 33, ¶10**]. Students found responsible for academic misconduct are referred to the Conduct Code process for conduct sanctions. [**ECF No. 33, ¶10**].

Pursuant to the Conduct Code "committing academic misconduct; including cheating, plagiarism and any other form of academic misconduct" is prohibited. [**ECF No. 33, ¶11**]. Like the Catalog, the Misconduct Policy defines academic misconduct as "any intentional or unintentional occurrence of … [u]sing the words or ideas of another, from the Internet or any source, without proper citation of the source(s), commonly called plagiarism." [**ECF No. 33, ¶11**]

1    and [**ECF No. 31, ¶10**].

2        On July 30, 2011, Phillip Burns ("**Burns**"), Director of OSC, notified Gamage, in writing,

3    that OSC had received a referral from Dr. Hodge regarding allegations that she was involved in a

4    possible Conduct Code violation; specifically plagiarism in her dissertation.  [**ECF No. 33, ¶16**].

5    Burns requested Gamage contact OSC to schedule an informal meeting regarding the alleged

6    Conduct Code violations.  [**ECF No. 33, ¶14**].

7        Gamage did in fact meet with Burns on August 19, 2011 to discuss the Academic

8    Misconduct Report.    [**ECF No. 33, ¶14**].    At the meeting, Gamage signed the Academic

9    Misconduct Report accepting responsibility for the plagiarism violation but did not accept the

10    sanction of being removed from the Program; and as such, requested a hearing.  [**ECF No. 33,**

11    **¶17**].    Burns explained the Academic Integrity Appeal Board ("**Academic Appeal Board**")

12    process to Gamage indicating she would have an opportunity to present her side of the story to the

13    board.  [**ECF No. 33, ¶18**].  Burns provided Gamage with a copy of both the Conduct Code and

14    Misconduct Policy, which Gamage acknowledges receiving.  [**ECF No. 33, ¶18 and ECF No. 30,**

15    **p. 66:17-20**].

16        Gamage filed her Academic Integrity Appeal with OSC on August 26, 2011, which

17    included a detailed letter explaining her "mistakes" and supporting documentation.  [**ECF No. 33,**

18    **¶18 and Ex. D** p. 62:22-24].    Although, Gamage admits she reviewed the Conduct Code and

19    Misconduct Policy after she filed her appeal she never asked the University for an advisor or

20    whether an advisor could attend the Academic Appeal Board meeting with her.  [**ECF No. 30**, p.

21    66:21-23].

22        The Academic Appeal Board convened on October 20, 2011 to consider Gamage's appeal.

23    [**ECF No. 33, ¶21**].  Both Gamage and Dr. Hodge attended.  [**ECF No. 33, ¶21**].  The Academic

24    Appeal Board listened to Gamage present her side of the story regarding why she believed she did

25    not commit plagiarism along with her responses to the board's questions.  [**ECF No. 33, ¶21 and**

26    **ECF No. 30**, pp. 66:24 – 67:4].  After deliberation, the Academic Appeal Board found Gamage

27    responsible for "committing academic misconduct; including cheating, plagiarism" [**ECF No. 33,**

28    **¶22**].  The Academic Appeal Board reached its decision by considering: (1) the documentation

provided by Dr. Hodge which showed plagiarized sections of Gamage's dissertation; (2) the documentation and discussion showing Gamage was given multiple opportunities to correct the academic issues; and (3) under direct question from the panel, Gamage admitted to making repeated "mistakes" but showed a lack of knowledge of the real problem in her plagiarism or that it was her responsibility to know how to correct it. **[ECF No. 33, ¶23** ].

Based on its finding Gamage responsible for academic misconduct, the Academic Appeal Board then determined whether the academic sanction given by her Dissertation Chair and Committee, and subsequently approved by the Department of Chemistry Chair and Dean of the College of Sciences should stand; that being Gamage's removal from the Program. **[ECF No. 33, ¶24]**. The Academic Appeal Board affirmed the recommendation that Gamage be removed from the Program. **[ECF No. 33, ¶24]**. Burns notified Gamage, in writing, of the Academic Appeal Board's decision and that the academic appeal process was complete but that she still needed to resolve the Conduct Code violation. **[ECF No. 33, ¶25]**.

On February 28, 2012, Gamage appealed her removal from the Program. **[ECF No. 33, ¶25]**. Pursuant to the Conduct Code, Gamage's Conduct Code violation hearing was set for March 27, 2012 regarding the recommended sanction of removal from her Program resulting from the academic misconduct determination (**"Conduct Hearing"**). Burns notified Gamage that the Conduct Hearing was set for March 9, 2012 but subsequently moved to April 10, 2012. **[ECF No. 33, ¶27]**. Again, Gamage was permitted to submit supporting documentation to be considered at the Conduct Hearing, which she did with the assistance of her advisor and legal counsel. **[ECF No. 33, ¶28]**.

On April 10, 2012, the Conduct Hearing was held. Gamage and her advisor, Michael Mascarello, Esq. (**"Mascarello"**), were present. **[ECF No. 33, ¶32]**. Gamage and Dr. Hodge made statements to the panel. **[ECF No. 33, ¶32]**. The Conduct Hearing panel reviewed and considered several factors; including the report from the Academic Appeal Board, statements made by Gamage, and answers to questions provided by Gamage as to the incident. **[ECF No. 33, ¶32]**. After consideration, the Conduct Hearing panel affirmed the sanction of removing Gamage from the Program because of her academic misconduct - plagiarism. **[ECF No. 33, ¶33]**.

1    Gamage was notified on April 12, 2012, of the results of the Conduct Hearing, which

2    affirmed her removal from the Program and informed her of her right to appeal the decision

3    ("**Conduct Appeal Review**"). [**ECF No. 33, ¶34**].

4    Gamage, with the assistance of her legal counsel and advisor, requested an Appeal Review

5    of the Conduct Hearing sanctions on April 20, 2012. [**ECF No. 33, ¶35**]. Gamage's appeal was

6    submitted to the UNLV Student Conduct Hearing Appeal Board ("**Appeal Board**") [**ECF No. 33,**

7    **¶37**]. In Gamage's appeal, she stated four (4) reasons that the Appeal Board should reverse the

8    Conduct Hearing decision: (1) Gamage asserted that her process rights under the Conduct Code

9    were denied; (2) Gamage did not have an adequate opportunity to prepare and present a defense to

10    the charges; (3) Gamage asserted that the Conduct Hearing Board was operating under the false

11    assumption that she was already responsible for academic misconduct; and (4) the sanctions were

12    too harsh. [**ECF No. 33-9, pp. 4-6**].

13    On May 1, 2012, the Appeal Board met to decide the merits of Gamage's appeal. [**ECF**

14    **No. 33, ¶37**]. The Appeal Board evaluated Gamage's four contentions for her appeal and

15    determined the sanctions were appropriate in this case of academic misconduct. [**ECF No. 33,**

16    **¶37**]. On May 3, 2012, Gamage was notified of the Appeal Board's decision to affirm the

17    Conduct Hearing decision to remove her from the Program and such sanction was appropriate.

18    [**ECF No. 33, ¶38**]. Gamage was separated from the Program in August 2012. [**ECF No. 33,**

19    **¶39**].

20                              **CONCLUSIONS OF LAW**

21    To the extent, any of the Findings of Facts constitute Conclusions of Law or the application

22    of law to fact; they are incorporated herein as Conclusions of Law. Similarly, to the extent, any of

23    the following Conclusions of Law constitute Findings of Facts, they are herein incorporated into

24    the Findings of Facts.

25    **II.    MOTION FOR SUMMARY JUDGMENT**

26    The Federal Rules of Civil Procedure provide for summary adjudication when the

27    pleadings, depositions, answers to interrogatories, and admissions on file, together with the

28    affidavits, if any, show that "there is no genuine dispute as to any material fact and that the movant

is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986) ("One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses"). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex*, 477 U.S. at 323-24.

In determining summary judgment, a court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000).

In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *Celotex*, 477 U.S. at 323-24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159-60 (1970).

If the moving party satisfies its initial burden the burden then shifts to the opposing part to establish that, a genuine issue of material fact exists. *See Matsushita Elect. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial. *T.W. Elect. Serv., Inc. v Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987). In other words, the nonmoving party cannot void summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See*

1    *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the

2    assertions and allegations of the pleadings and set forth specific facts by producing competent

3    evidence that shows a genuine issue for trial. *Celotex*, 477 U.S. at 324.

4        The court views the evidence and any inferences in the light most favorable to the non-

5    moving party. *Adickes*, 398 U.S. 144 (1970). Where a party fails to offer evidence sufficient to

6    establish an element essential to its case, no genuine issue of material fact can exist, because "a

7    complete failure of proof concerning an essential element of the nonmoving party's case

8    necessarily renders all other facts immaterial." *Celotex,* 477 U.S. at 323.

9    **II.    ALLEGED CIVIL RIGHTS VIOLATION (PLAINTIFF'S SIXTH CAUSE OF ACTION)**

10        "To state a claim under §1983, a plaintiff must allege the violation of a right secured by the

11    Constitution and laws of the United States, and must show that the alleged deprivation was

12    committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 28 (1988).

13    Plaintiff alleges that that the Defendants deprived her of her due process rights under the

14    Fourteenth Amendment. Specifically, Plaintiff asserts that she never had an opportunity to dispute

15    the charges that she committed plagiarism by failing to cite properly to whatever sources she was

16    using in her dissertation; as such, she was "provided none of the due process required under the

17    UNLV Student Conduct Code." [ECF No. 34, pp.11:28 – 12:1].

18        **A.    THE ELEVENTH AMENDMENT BARS PLAINTIFF'S SUIT FOR MONETARY DAMAGES**

19            **AGAINST ALL DEFENDANTS IN THEIR OFFICIAL CAPACITIES.**

20        Eleventh Amendment immunity bars Plaintiff from bringing claims for monetary damages

21    in §1983 actions against a state or its officials acting in their official capacities unless the state has

22    waived its immunity or Congress has exercised its power to override that immunity. *Seminole*

23    *Tribe of Fla. v. Florida.*, 517 U.S. 44, 56, (1996); *Will v. Mich. Dep't. of State Police*, 491 U.S. 58,

24    66, (1989). The State of Nevada has explicitly refused to waive its immunity to suit under the

25    Eleventh Amendment. NEV. REV. STAT. 41.031(3); *O'Connor v. State of Nev.*, 686 F.2d 749, 750

26    (9th Cir. 1982), *cert. denied*, 459 U.S. 1071 (1982).

27        Eleventh Amendment immunity extends to state instrumentalities and agencies. *Edelman*

28    *v. Jordan*, 415 U.S. 651, 663 (1974). The university system in Nevada is a state instrumentality or

agency within the meaning of the Eleventh Amendment. *Disabled Rights Action Comm. v. Las Vegas Events, Inc.*, 375 F.3d 861, 883 n.17 (9th Cir. 2004) (noting that the Nevada System of Higher Education is immune from suit under the *Eleventh Amendment*); *see also Johnson v. Univ. of Nev.*, 596 F.Supp.175, 178 (D.Nev. 1984).

The Eleventh Amendment immunity extends to officials sued, in their official capacities. A suit against a state official *in his or her official capacity* is not a suit against the official but rather is a suit against the official's office. *Will*, 491 U.S. at 71. However, in *Ex parte Young*, 209 U.S. 123 (1908), the Supreme Court held that the Eleventh Amendment immunity doctrine does not bar suits "brought in federal court against state officials in their official capacities for prospective injunctive relief to prevent future violations of federal law." *Fond du Lac Band of Chippewa Indians v. Carlson*, 68 F. 3d 253, 255 (8th Cir. 1995). Therefore, to the extent, that Plaintiff is seeking injunctive relief, she may sue the individual defendants in their official capacities. *Will*, 491 U.S. at 71.

The University and Dr. Hodge, in their official capacity are immune from suit for damages by the Eleventh Amendment. Gamage did not sue the Board of Regents in their individual capacities. Accordingly, the Board of Regents is immune from suit under §1983 for monetary damages. In addition, Dr. Hodge, in his official capacity, is immune from suit for damages because a suit against a state official in her official capacity is a suit against the official's office. *Will*, 491 U.S. at 71. Accordingly, the Court grants Defendants' Motion for Summary Judgment on Plaintiff's Sixth Cause of Action against the University and Dr. Hodge, in their official capacities because they are immune from suit under the Eleventh Amendment.

**B.    ANY CLAIM UNDER A *MONELL* THEORY IS BARRED**

Upon review of Gamage's pleadings, it appeared to the Court that she was attempting to assert a claim in theory under *Monell* against the Defendants. Gamage, however, conceded that she was not asserting a municipal liability theory under *Monell* against Defendants both in her Opposition to Defendants' Motion [**ECF No. 34**] and at the hearing on this matter. To ensure clarity, the Court concludes to the extent Gamage has attempted to or her pleadings can be construed to have asserted a theory of liability under *Monell* against Defendants, the Supreme

Court has expressly declined to extend *Monell*'s theory of municipal liability under §1983 to state entities. *Will*, 491 U.S. at 70-71. Accordingly, as a matter of law, Gamage is precluded from bringing such action against Defendants in their official capacities.

**C.   DEFENDANT DR. HODGE IS PROTECTED FROM SUIT FOR DAMAGES IN HIS INDIVIDUAL CAPACITY BY QUALIFIED IMMUNITY**

In 42 U.S.C. §1983 actions, qualified immunity protects a government official sued in his personal capacity from civil liability when performing discretionary acts, so long as those acts do not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 817-18 (1982). Qualified immunity under federal law is not merely a defense to liability; it is "an entitlement not to stand trial or face the other burdens of litigation." *Saucier v. Katz*, 533 U.S. 194, 200 (2001) (*quoting Mitchell v. Forsyth*, 472 U.S. 511, 526, (1985)).

Qualified immunity requires a two-part analysis. First, whether the official's conduct violated a constitutional right; and second, whether at the time of the violation, the constitutional right was clearly established. *Id.* at 201. "For a constitutional violation to be clearly established, its contours must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002). It is within the Court's sound discretion to address these two prongs in any sequence it sees fit. *Pearson v. Callahan*, 555 U.S. 223 (2009).

Plaintiff alleges that Dr. Hodge violated her procedural and substantive due process rights as follows: (1) that Mr. Burns checked the box on the Misconduct Report that said she was admitting to plagiarism, and merely objecting to the particular sanction that was being recommended; (2) that she was not allowed to present her version of the facts at a hearing; and (3) that she was not allowed to be accompanied by an advisor. Construing the facts in the light most favorable to Gamage, Dr. Hodge is shielded by qualified immunity because the facts show that Dr. Hodge's conduct did not violate plaintiff's due process rights.

**1.   Procedural Due Process**

A due process claim requires a two-part analysis – that plaintiff was deprived of a protected

1   interest, and if so, what process was she due. *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 428

2   (1982).  Plaintiff has a protected property interest in continued enrollment at a public institution of

3   higher learning. *Univ. of Mo. v. Horowitz*, 435 U.S. 78, 84-5 (1978).  When a student is suspended

4   from a public school or university for disciplinary reasons due process requires "that the student be

5   given oral or written notice of the charges against [her] and, if [she] denies them, an explanation of

6   the evidence the authorities have and an opportunity to present [her] side of the story." *Goss v.*

7   *Lopez*, 419 U.S. 565, 581 (1975).  Such complete procedural safeguards do not apply when a

8   student is dismissed for failure to meet academic standards. *Horowitz*, 435 U.S. at 84.  Procedural

9   due process is satisfied for the dismissal of a student for academic reasons if the student had (1)

10  prior notice of faculty dissatisfaction with her performance and of the possibility of dismissal, and

11  (2) if the decision to dismiss the student was careful and deliberate. *Id.* at 85.

12          Without reaching the conclusion whether Plaintiff's removal from the Program was for an

13  academic reason or a disciplinary reason, the Court finds the Defendants provided Gamage more

14  than the procedural due process she was entitled to if she had been removed from the Program

15  solely for disciplinary reasons.  Gamage does not dispute the fact that she received notice of the

16  allegations of plagiarism or notice of any of the hearings.  Gamage asserts that she was never given

17  an opportunity to actually appeal the finding of plagiarism, but only the sanction and that she was

18  denied an advisor at the October 20, 2011 Academic Appeal Board hearing.

19          The Court finds, however, the Academic Integrity Appeal Panel Internal Memorandum

20  dated October 21, 2011 completely contradicts her claim.  The Academic Appeal Board found

21  Gamage responsible for plagiarism based on:  (1) documentation provided by Dr. Hodge that

22  showed plagiarized sections of her dissertation; (2) documentation and discussion showing

23  Gamage was given multiple opportunities to correct the issues; and (3) under direct question from

24  the panel, Gamage admitted to making repeated "mistakes", but showed a lack of knowledge of the

25  real problem in her plagiarism, or that it was her responsibility to know how to correct it.

26  Additionally, Gamage does not deny that she submitted a written statement to the Academic

27  Appeal Board providing an explanation and evidence of why she feels she did not commit

28  plagiarism.

1    The Court also finds Gamage's assertion that the University denied her advisor at the

2 Academic Appeal Board unfounded.  Although, Plaintiff admits she reviewed the Conduct Code

3 and Misconduct Policy provided to her by Burns, she also admits she never once asked the

4 University if she could have an advisor attend with her the Academic Appeal Board hearing.

5 Gamage not only received notice of the charges against her but also was provided an opportunity

6 to dispute them and provide the Academic Appeal Board with her side of the story.  Contrary to

7 Plaintiff's contentions, the record is replete with competent evidence that Gamage was afforded all

8 her due process she was entitled to receive.

9    Last, the Court finds no evidence in the record that the University and/or Dr. Hodge failed

10 to follow the University's regulations.  The University and Dr. Hodge followed the Conduct Code

11 and the Misconduct Policy.  Plaintiff has failed to put forth any evidence that demonstrates any

12 failure by the Defendants to follow University policies.  Gamage was notified by Dr. Hodge of the

13 plagiarism allegations.  Dr. Hodge filed the appropriate Academic Misconduct Report.  Gamage

14 met with OSC regarding the allegations of plagiarism.  Gamage requested a hearing regarding the

15 allegations of plagiarism.  Gamage had notice of the Conduct Hearing.  Gamage had an

16 opportunity to be heard at the Conduct Hearing.  At the Conduct Hearing, Gamage did have an

17 advisor.  Gamage did have an opportunity to tell her side of the story as to why she should not be

18 removed from the Program.  The Conduct Hearing affirmed the recommendation of her

19 Committee, Chair, and College of Science recommendation that she be removed from the

20 Program.  Gamage had another opportunity to appeal the sanctions.  In short, Plaintiff has not put

21 forth any competent evidence to demonstrate how a clearly established statutory or constitutional

22 right was violated.  The process plaintiff received was substantially greater than that afforded to

23 students who are subject to academic proceedings.  Plaintiff received both written notice and an

24 opportunity to respond. *See Goss*, 419 U.S. 581.

25    Consequently, the Court finds that Gamage has failed to make out her claim for a

26 procedural due process violation, having received notice and multiple hearings.  Finding no triable

27 issue of material fact remains on her procedural due process claim against the Defendants, the

28 Court dismisses Gamage's procedural due process claim against all Defendants, with prejudice.

2.    <u>Substantive Due Process</u>

Substantive due process provides heightened protection against government interference with certain fundamental rights and liberties.  Although courts hesitate to extend substantive due process protection to non-liberty interests, courts may review an academic decision of a public education institution under the substantive due process standard.  *See Moore v. City of East Cleveland, Ohio*, 431 U.S. 494, 503 (1977).  In doing so, the court must show great "respect for the faculty's professional judgment, [and should not] override it unless it is such a substantial department from accepted academic norms as to demonstrate that the person or committee responsible did not actually exercise professional judgment."  *Regents of the Univ. of Michigan v. Ewing*, 474 U.S. 214, 225 (1985).

To establish a violation of substantive due process, a student must demonstrate arbitrary and capricious conduct on the part of university officials by showing that there was no rational basis for the university's decision, or must show that the dismissal was motivated by fad faith or ill will unrelated to academic performance.  *Horowitz*, 435 U.S. at 91-92.  A student may maintain a substantive due process claim if the university's actions constituted a "substantial departure from accepted academic norms as to demonstrate that the person or committee responsible did not actually exercise professional judgment."  *Ewing*, 474 U.S. at 225.

It appears to the Court that due to the length of the program and Gamage's diligence in participation for a length of time, that she does have a property interest that attaches in this situation.  Assuming Gamage does have a property interest in her continued education, the record does not support her claim that her dismissal from the Program was arbitrary or capricious.  Nor does she establish that the University's actions substantially departed from academic norms so as to demonstrate that Dr. Hodge did not exercise professional judgment.

Furthermore, it is clear to the Court that Gamage did sign the Academic Misconduct Report provided to her by Burns regarding suspected plagiarism in her dissertation.  Plaintiff contends that although she signed the Academic Misconduct Report, all the check boxes were blank, and only after she signed it did Burns check the box admitting she was responsible for plagiarism and merely objecting to her removal from the Program.  The Court does not find any evidentiary

support for her contention because the Plaintiff did not raise this issue in her appeal to the Academic Appeal Board, as an explanation, that she did not in fact even commit plagiarism. Based on the undisputed facts, it seems clear that Plaintiff did admit that she committed the plagiarism, and that the only question was whether she would be given yet another opportunity, or some other more lenient sanction, rather than being removed from the Program altogether.

The Court further finds there is no evidence that the decision by her Committee to dismiss her from the Program was arbitrary or capricious.   Instead, the record demonstrates that the Committee's decision to do so was the product of months of working with her on her dissertation and giving her multiple opportunities to remove the plagiarized material from it.   Nevertheless, Gamage failed to do so.  Dr. Hodge complied with all the procedural requirements set forth in the Graduate Catalog, Conduct Code, and Misconduct Policy.   Dr. Hodge gave Gamage notice of finding plagiarized material in her dissertation, he discussed the issues with her dissertation and gave her an opportunity to correct them, and the University provided her with several hearing opportunities.   Plaintiff received all the process she was entitled to.   Moreover, the decision to recommend Gamage's removal from the Program was by unanimous vote of her committee, not Dr. Hodge's alone.  Gamage has not provided any evidence that disputes the facts that Dr. Hodge's decision to recommend Gamage's dismissal from the Program was careful, deliberate, and objectively reasonable.

Consequently, the Court finds that Gamage has failed to make out her claim for a substantive due process violation, having received notice and multiple hearings.  Finding no triable issue of material fact remains on her substantive due process claim against the Defendants, the Court dismisses Gamage's substantive due process claim against all Defendants, with prejudice.

### III.   INJUNCTIVE RELIEF/DECLARATORY RELIEF (FOURTH CAUSE OF ACTION) IS DENIED.

To prevail in a request for injunctive relief, a moving party must meet one of two tests. *Stanley v. Univ. of S. Cal.*, 13 F.3d 1313, 1319 (9th Cir. 1994) (citation omitted).   The first test requires the moving party to show that: (1) he will suffer irreparable injury if the injunction is not granted; (2) he will likely prevail on the merits; (3) the State will not be harmed by the injunction more than he is helped by it; (4) and granting the injunction is in the public interest.  *Id.*  Under the

S:\General Counsel\LITIGATION FILES\Gamage-Samarasek, Sujanie\Pleadings\Draft\2013-10-10 Proposed Findings of Fact, Conclusions of Law and Order (2).docx

15

second test, the moving party must show "either a combination of probable success on the merits and the possibility of irreparable injury or that serious questions are raised and the balance of hardship tips sharply in his favor." *Id.* (emphasis in original).  Concerning the balance of hardships, even if the balance tips in favor of the moving party, a fair chance of success on the merits must nevertheless be shown.  *Id.*  The two alternative tests "represent two points on a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases.  They are not separate tests but rather outer reaches of a single continuum." *Baby Tam Co. v. City of Las Vegas*, 154 F.3d 1097, 1100 (9th Cir. 1998).

The Court finds that under either of these two tests, that the submitted evidence does not demonstrate a likelihood of success on the merits of any of Gamage's claims.  Gamage's contention that she was deprived of any due process rights is refuted by Defendants' evidence that Gamage not only had notice of the allegations of academic misconduct, plagiarism, but also she was given the opportunity to present her side of the story to the Academic Appeal Board.  As such, Plaintiff is not entitled to injunctive relief.

While, a declaratory judgment may be paired with injunctive relief where appropriate, a declaratory judgment requires a justiciable controversy.  *Aronoff v. Cattleman*, 345 P.2d 221 (Nev. 1959).  As Plaintiff has failed to present sufficient evidence that her due process rights were violated, no justiciable controversy exists.  Plaintiff is not entitled to a declaratory judgment.

Accordingly, Plaintiff's claim for injunctive and/or declaratory relief against all Defendants is dismissed, with prejudice.

IV.    STATE LAW CLAIMS

   A.    THE COURT EXERCISES ITS SUPPLEMENTAL JURISDICTION OVER THE STATE CLAIMS.

Gamage's remaining causes of action for Breach of Contract (First Cause of Action); Negligence/Negligent Hiring, Training & Supervision (Second Cause of Action); Intentional and Negligent Infliction of Severe Mental Distress (Third Cause of Action); and Defamation, Libel and Slander Per Se (Fifth Cause of Action) are state law claims.  Under the doctrine of supplemental jurisdiction, a federal court may hear state claims that are part of the "same case or controversy" as

a claim arising under federal law.  28 U.S.C. § 1367(a).  However, the court may decline to exercise supplemental jurisdiction over state law claims if the court determines that federal claims warrant dismissal.  28 U.S.C. §1367(c)(3).  The exercise of supplemental jurisdiction is entirely within the Court's discretion. *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 716 (1966). Here, the Court has decided to exercise its discretion and accept supplemental jurisdiction over all of Plaintiff's state law claims arising from the same "nucleus of operative facts" - Plaintiff's academic misconduct and ultimate removal from the Program - as her federal civil rights claim.

**B.    BREACH OF CONTRACT (FIRST CAUSE OF ACTION)**

To prevail on its breach of contract claim, Gamage must establish that: 1) she entered into a valid and existing contract with Defendants; 2) Gamage performed or was excused from performance; 3) Defendants breached; and 4) Gamage suffered damages as a result of the breach. *Calloway v. City of Reno*, 116 Nev. 250, 993 P.2d 1259 (2000).  A breach of contract is a material failure of performance of a duty arising under or imposed by agreement. *Calloway v. City of Reno*, 116 Nev. 250, 256, 993 P.2d 1259, 1263 (2000); RESTATEMENT (SECOND) OF CONTRACTS § 235(2).  A material breach of a contract occurs when there is a breach of an essential and inducing feature of the contract.  RESTATEMENT (SECOND) OF CONTRACTS § 237.  Plaintiff contends that she had a contractual relationship with the University through the UNLV Student Conduct Code, UNLV Student Handbook, and the NSHE Code.

The record does not support Gamage's contention that the University breached any specific provision of the "UNLV Student Handbook, UNLV Student Conduct Code and the NSHE Code" when it failed to provide her with the rights in the Conduct Code.  **[ECF No. 1, Ex. A ¶22]**.

First, as to Dr. Hodge, Plaintiff concedes her breach of contract claim against him and admits that she only brought "a breach of contract claim against the University Defendant." **Oppn. p. 17:27**.  Thus, to the extent that Plaintiff has asserted or alleged a breach of contract claim against Defendant Hodge, Plaintiff withdraws the breach of contract (First Cause of Action) against him.  Accordingly, Plaintiff's breach of contract against Dr. Hodge is dismissed with prejudice.

Next, the Court accepting Gamage's facts as true, that somehow the Student Handbook, the

Conduct Code and/or the NSHE Code create a contractual relationship between the University and Gamage, she has failed to establish how the University breached any of these documents.  Plaintiff asserts that the University breached these documents when it failed to provide her with the Student Rights in the Student Conduct Code.  The Court finds, however, the record does not support Gamage's claim that the University breached any of those documents.  Nor does it establish that the University's actions were arbitrary or capricious.  In fact, the record supports the conclusion that the University had a rational basis for its actions in removing Gamage from the Program. There is no evidence that the University's actions substantially departed from academic norms to demonstrate that it failed to exercise professional judgment.  The rights Gamage requests have been provided to her.  Plaintiff did not make any claim that she actually attempted to exercise any of those rights and was denied the ability to exercise them.

The Court finds, in reviewing the evidence in the light most favorable to Gamage, no genuine issue of material fact exists regarding whether UNLV acted in an arbitrary, capricious, or bad faith manner.  Gamage was informed of the alleged plagiarism findings.  [**ECF No. 31**, ¶10]. Plaintiff's Committee allowed her an opportunity to correct her plagiarism citations.  [**ECF No. 31**, ¶10]. Plaintiff was permitted to appeal her advisory committee's findings of academic dishonesty. [**ECF No. 33**, ¶19].  Plaintiff was provided and reviewed the Conduct Code and Misconduct Policy but never asked to have an advisor present at the Academic Appeal Board meeting.  [**ECF No. 30**, p. 66:21-23].  Plaintiff had a Conduct Hearing regarding the sanctions, removal from the Program that her Committee recommended.  [**ECF No. 33**, ¶30].  Plaintiff appealed the sanctions the Conduct Hearing affirming the decision to remove her from the Program.  [**ECF No. 33**, ¶35]. The decision to remove Plaintiff followed a finding that she had committed academic misconduct including her own admission she "had not fully conformed to UNLV Plagiarism Policy" and that it was just a "mistake due to [her] lack of proper awareness of the plagiarism policy."  [**ECF No. 33, Ex. H at UNLV1018** ¶1].

Accordingly, the Court finds the Plaintiff has failed to put forth any competent evidence that the University breached any of the alleged contract documents nor has she established that the decision to academically remove her from the Program was arbitrary, capricious or in bad faith.

S:\General Counsel\LITIGATION FILES\Gamage-Samarasek, Sujanie\Pleadings\Draft\2013-10-10 Proposed Findings of Fact, Conclusions of Law and Order (2).docx

18

Consequently, the Court grants Defendants Motion to dismiss Plaintiff's Breach of Contract claim against the University, with prejudice.

### C.   NEGLIGENCE/NEGLIGENT HIRING, TRAINING & SUPERVISION (SECOND CAUSE OF ACTION)

"The tort of negligent hiring imposes a general duty on the employer to conduct a reasonable background check on a potential employee to ensure that the employee is fit for the position." *Burnett v. C.B.A. Sec. Serv., Inc.,* 107 Nev. 787, 820 P.2d 750 (1991). An employer breaches this duty if he hires an employee when he knew or should have known of the employee's dangerous propensities. *Hall v. SSF, Inc.*, 112 Nev. 1384, 930 P.2d 94 (1996). Plaintiff contends that the "Defendant University had a duty to … not to hire individuals with a propensity towards committing unlawful acts against those who lawfully go about their business and to adequately train and supervise their agents, officers and employees." *See* Compl., pp.6-7, para.28-2. Plaintiff does not specify what duty, if any, that she is claiming is owed to her. Plaintiff failed to put forth any evidence establishing that the professors did anything wrong, and that the University should have known that these individuals should not be put in that position. Moreover, Plaintiff has not demonstrated she suffered any physical harm. Because Plaintiff has failed to establish an essential element of her claim of negligent hiring, training, and supervision against the University; this Court grants Defendants Motion to dismiss Plaintiff's Negligence/Negligent Hiring, Training & Supervision claim against the University, with prejudice.

### D.   INTENTIONAL AND NEGLIGENT INFLICTION OF SEVERE MENTAL DISTRESS (THIRD CAUSE OF ACTION)

#### 1.   Intentional ("IIED") Infliction of Severe Mental Distress

To establish a claim for IIED, a plaintiff must allege: "(1) extreme and outrageous conduct with either the intention of, or reckless disregard for, causing emotional distress, (2) the plaintiff's having suffered severe or extreme emotional distress and (3) actual or proximate causation." *Star v. Rabello*, 97 Nev. 124, 625 P.2d 90, 91-92 (1981). For conduct to be extreme and outrageous, it must rise to a level that is "outside all possible bounds of decency and is regarded as utterly intolerable in a civilized society." *Maduike v. Agency Rent-A-Car,* 114 Nev. 1, 953 P.2d 24, 26

1  (1998); *see also Welder v. University of Southern Nevada*, 833 F.Supp.2d 1240, 1245 (D. Nev.

2  2011) (applying Nevada law).

3  The Court finds that the record does support Plaintiff's contention that the Defendants

4  engaged in extreme and outrageous conduct or that they did so intentionally or with reckless

5  disregard to causing Plaintiff emotional distress.  Furthermore, Plaintiff has not put forth any

6  evidence to support her claim that she suffers from severe emotional distress.  *Jordan v. State ex*

7  *rel. Dept. of Motor Vehicles and Public Safety*, 121 Nev. 44, 110 P.3d 30, 52 (2005), *abrogated on*

8  *other grounds by Buzz Stew, LLC v. City of N. Las Vegas*, 124 Nev. 224, 181 P.3d 670, 672 n.6

9  (2005).  While Plaintiff contends she saw a therapist three times and suffered two fainting spells,

10 Plaintiff did not seek any further medical attention and the record is devoid of any evidence that

11 she suffered any severe emotional distress when she only saw a counselor three times.

12 Additionally, Plaintiff has failed to establish how the Defendants were the actual or proximate

13 cause of her fainting spells.

14 Although Plaintiff raised an assertion that Dr. Hodge "intimidated" her to sending a rough

15 draft of her dissertation; namely an unplagiarized version, there was no evidence to support her

16 contentions.  Nothing was brought forth during the deposition of either Plaintiff or Dr. Hodge.

17 Because Plaintiff has failed to show that a triable issue of material fact remains to be tried on her

18 third Cause of Action for IIED, Plaintiff's Third Cause of Action against the Defendants is

19 dismissed, with prejudice.

20  2.  Negligent ("**NIED**") Infliction of Severe Mental Distress

21 Nevada law also recognizes NIED, and in order to state a claim, a plaintiff must allege:  (1)

22 the defendant acted negligently, (2) either a physical impact or, in the absence of a physical

23 impact, proof of serious emotional distress causing physical injury or illness, and (3) actual or

24 proximate causation.  *Barmettler v. Reno Air, Inc.*, 114 Nev. 441, 956 P.2d 1382, 1387 (1998).  At

25 the hearing on the Defendants' Motion for Summary Judgment, Plaintiff's counsel asserted that he

26 was unaware that there was a NIED claim and because she failed to oppose it, that Plaintiff, by

27 oral motion, withdrew such claim.  As such, Plaintiff made an oral motion to withdraw the

28 Plaintiff's Third Causes of Action for NIED against all Defendants.  Accordingly, the Court

granted Plaintiff's oral motion to withdraw her Third Causes of Action for NIED against all Defendants, with prejudice.

### E.   DEFAMATION, LIBEL, AND SLANDER PER SE (FIFTH CAUSE OF ACTION)

"An action for defamation requires the plaintiff to prove four elements: (1) a false and defamatory statement; (2) an unprivileged publication to a third person; (3) fault, amounting to at least negligence; and (4) actual or presumed damages." *Clark Cnty. Sch. Dist. v. Virtual Educ. Software, Inc.*, 125 Nev. 374, 213 P.3d 496, 503 (2009) (quotation omitted).   At the hearing on the Defendants' Motion for Summary Judgment, Plaintiff made an oral motion to withdraw the Plaintiff's Fifth Causes of Action for defamation, libel, and slander per se against Defendant Dr. Hodge.   Accordingly, the Court grants Plaintiff's oral motion to withdraw her Fifth Cause of Action against Defendant Hodge, with prejudice.

### F.   DR. HODGE IS ENTITLED TO DISCRETIONARY IMMUNITY

Nevada law provides discretionary immunity to state agencies and their employees in the performance of discretionary acts.   Nev. Rev. Stat. 41.031(2); *see also State, Univ. and Cmty. Coll. Sys. v. Sutton*, 120 Nev. 972, 980, 103 P.3d 8 (2004).   Nevada's discretionary exception provision is identical to that of the Federal Tort Claims Act, 28 U.S.C., Section 2680(a) (1965).   Federal courts distinguish the policy stage, where the discretionary exception applies, from the actual construction and operation of the project.   The latter may subject the sovereign to liability. *Harrigan v. City of Reno*, 86 Nev. 678, 681, 475 P.2d 94 (1970) (*citing U.S. v. Hunsucker*, 314 F.2d 98 (9th Cir. 1962)).

In Nevada, a two-part test was adopted by the Nevada Supreme Court to determine whether discretionary immunity applies.   To fall within the scope of discretionary immunity, a decision must:   (a) involve an element of individual judgment or choice; and (2) be based upon considerations of social, economic, or political policy.   *Martinez v. Maruszak*, 123 Nev. 433, 445-47, 168 P.3d 720, 729 (2007).   The focus of the second criterion's inquiry is "not on the employee's subjective intent to exercising the discretion conferred by statute or regulation, but on the nature of the actions taken and on whether they are susceptible to policy analysis." *Id.* At 728 ( *quoting United States v. Gaubert*, 499 U.S. 315, 325 (1991)).   "Under that test, decisions that occur

at all levels of government, including frequent or routine decisions, may be shielded by NRS 41.032(2) discretionary-act immunity, provided the decisions involved government policy concerns." *Ransdell v. Clark County*, 192 P.3d 756 (Nev. 2008).

The Court finds this case is exactly the type of cases that Nev. Rev. Stat. 41.031 is designed for. When individual employees of state agencies exercise due care and discretion involving an element of deliberation and judgment, the discretionary act immunity provides a complete bar to any prosecution. Contrary to Plaintiff's contentions, she has not demonstrated any actions by Dr. Hodge that this Court can find were done in bad faith. This is especially evident when Plaintiff had: (1) a Advisory Committee that recommended her removal from the program; (2) she received notice of the allegations of misconduct; (3) was afforded an opportunity to respond to those allegations; (4) an Academic Integrity Appeal hearing; (4) a Student Conduct hearing with her attorney present; and (4) an Student conduct Hearing Appeal written by her attorney.

The Court's review of the record fails to demonstrate any bad faith on the part of Dr. Hodge. The evidence demonstrates that Dr. Hodge's decisions were made considering University policies and in furtherance of public policy to only issue degrees to those who have rightfully earned them and not just because someone put their time in at the university. The Court finds that Dr. Hodge acted in a reasonable way. Dr. Hodge's decisions, including the decision to remove her from the Program after being found responsible for committing plagiarism, required the exercise of discretion and is within the scope of Dr. Hodge's authority. Accordingly, because Dr. Hodge performed a discretionary function or duty under Nev. Rev. Stat. 41.032, he is entitled to discretionary immunity as to Plaintiff's state law claims. Accordingly, Plaintiff's state law claims against Dr. Hodge are barred by discretionary immunity; and as such, are dismissed, with prejudice.

## JUDGMENT

**NOW, THEREFORE**, based on the foregoing Findings of Fact and Conclusions of Law, this Court hereby enters judgment as follows:

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that Plaintiff's oral Motion to Withdraw Plaintiff's Breach of Contract claim, Cause of Action #1, against Defendant Dr.

1   Hodge is **GRANTED**, with prejudice.

2        **IT IS HEREBY FURTHER ORDERED, ADJUGED, AND DECREED** that Plaintiff's

3   oral Motion to Withdraw Plaintiff's Defamation, Libel, and Slander Per See claim, Cause of

4   Action #5, against Defendant Hodge is **GRANTED**, with prejudice.

5        **IT IS HEREBY FURTHER ORDERED, ADJUGED, AND DECREED** that Plaintiff's

6   oral Motion to Withdraw Plaintiff's Negligent Infliction of Severe Mental Distress claim, part of

7   Cause of Action #3, against all Defendants is **GRANTED**, with prejudice.

8        **IT IS FURTHER HEREBY ORDERED, ADJUGED, AND DESCREED** that

9   Defendants' Motion for Summary Judgment [**ECF No. 29**] as to Plaintiff's Breach of Contract

10  claim, Cause of Action #1, against Defendant University is **GRANTED**, with prejudice.

11       **IT IS FURTHER HEREBY ORDERED, ADJUGED, AND DESCREED** that

12  Defendants' Motion for Summary Judgment [**ECF No. 29**] as to Plaintiff's Negligence/Negligent

13  Hiring, Training, & Supervision claim, Cause of Action #2, against all Defendants is **GRANTED**,

14  with prejudice.

15       **IT IS HEREBY FURTHER ORDERED, ADJUGED, AND DECREED** that Plaintiff's

16  oral Motion to Withdraw Plaintiff's Negligent Infliction of Severe Mental Distress claim, part of

17  Cause of Action #3, against all Defendants is **GRANTED**, with prejudice.

18       **IT IS HEREBY FURTHER ORDERED, ADJUGED, AND DECREED** Defendants'

19  Motion for Summary Judgment [**ECF No. 29**] as to Plaintiff's Injunctive and Declaratory Relief

20  claim, Cause of Action #4, against all Defendants is **GRANTED**, with prejudice.

21       **IT IS HEREBY FURTHER ORDERED, ADJUGED, AND DECREED** that

22  Defendants' Motion for Summary Judgment [**ECF No. 29**] as to Plaintiff's Defamation, Libel, and

23  Slander Per See claim, Cause of Action #5, against Defendant University is **GRANTED**, with

24  prejudice.

25  ///

26  ///

27  ///

28  ///

**IT IS HEREBY FURTHER ORDERED, ADJUGED, AND DECREED** that Defendants' Motion for Summary Judgment [**ECF No. 29**] as to Plaintiff's Civil Rights Violation, Due Process Violation, Fifth and Fourteenth Amendment claim, Cause of Action #6, against all Defendants is **GRANTED**, with prejudice.

**IT IS SO ORDERED** this 17th day of October, 2013.

**NUNC PRO TUNC:  10/17/2013.**

_____
Gloria M. Navarro
United States District Judge

Submitted by:                                      Approved as to Form and Content:


**/S/ DEBRA L. PIERUSCHKA**                **/S/ MICHAEL L. MASCARELLO**
ELDA M. SIDHU                                 Jason J. Bach, Esq.
General Counsel                               Michael L. Mascarello, Esq.
Nevada Bar No. 7799                           THE BACH LAW FIRM, LLC
DEBRA L. PIERUSCHKA                           6053 South Fort Apache Road, Ste. 130
Assistant General Counsel                     Las Vegas, Nevada 89148
Nevada Bar No.  10185                         *Attorneys for Plaintiff*
UNIVERSITY OF NEVADA, LAS VEGAS
4505 S. Maryland Parkway, Box 451085
Las Vegas, Nevada  89154-1085
Telephone:  (702) 895-5185
Facsimile:  (702) 895-5299
*Attorneys for Defendants*