# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

**\*\*\***

| | |
|---|---|
| SUJANIE GAMAGE SMARASEK, | 2:12–cv–290–GMN–VCF |
| Plaintiff, | |
| vs. | **REPORT & RECOMMENDATION** |
| THE STATE OF NEVADA, *et al*., | |
| Defendants. | |

This matter involves former Ph.D. candidate Sujanie Gamage Smarasek's ("Gamage") section 1983 action against the University of Nevada, Las Vegas and her former dissertation supervisor, Dr. Vernon Hodge. Gamage alleged that her due process rights were violated when the University expelled her for plagiarizing her dissertation. (Compl. (#1) Exhibit A at ¶¶ 1–20[1]). The Honorable Gloria M. Navarro, Chief U.S. District Court Judge, entered summary judgment against Gamage on all counts (#54). Now, the University moves for an award of attorney's fees, costs, and interest, arguing that Gamage and her counsel, The Bach Law Firm, prosecuted a meritless action in bad faith (#57). For the reasons stated below, the University's motion is granted in part and denied in part.

## BACKGROUND

The University's motion for attorneys' fees raises the questions of whether Gamage's action was "unreasonable, frivolous, meritless or vexatious" or prosecuted "recklessly or in bad faith." *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 421 (1978) (discussing the imposition of attorney's fees under 42 U.S.C. § 1988(b)) (citation omitted); *United States v. Blodgett*, 709 F.2d 608,

---

[1] Parenthetical citations refer to the court's docket.

610 (9th Cir. 1983) (discussing the imposition of attorney's fees under 28 U.S.C. § 1927). For purposes of the University's motion, the relevant facts include: (1) The Bach Law Firm's history of prosecuting identical students–rights actions, and (2) the court's disposition of the allegations in Gamage's complaint. Both are discussed below.

## I.    The Bach Law Firm's History Students' Rights Litigation

Since at least 2009, The Bach Law Firm has maintained a students' rights practice group. The practice seeks, *inter alia*, to "fight to have [] expulsion[s] reversed." *See* THE BACH LAW FIRM, *Students' Rights: Legal Defense of Students' Rights*, http://www.bachlawfirm.com/Practice-Areas/Students-Rights.shtml (last visited April 7, 2014). A representative case is *Danielle Maffeo v. Nevada, et al.*, No. 09–cv–2274–HDM–LRL (D. Nev. Nov. 30, 2009).

On November 30, 2009, The Bach Law Firm sued the University of Nevada, Las Vegas, School of Dental Medicine, its Deans, and a professor on behalf of Danielle Maffeo, who was expelled for poor academic performance. The complaint pled causes of action under section 1983 for allegedly violating Maffeo's procedural and substantive due process rights. Additionally, the complaint pled state law causes of action for breach of contract, negligence, negligent hiring, training, and supervision, intentional infliction of emotional distress, injunctive and declaratory relief, and defamation, libel, and slander *per se*. *See Danielle Maffeo v. Nevada, et al.*, No. 09–cv–2274–HDM–LRL, Compl. (#1) (D. Nev. Nov. 30, 2009).

The University moved for summary judgment, arguing, *inter alia*, that defendants were protected by the Eleventh Amendment or qualified immunity and that Maffeo's due process rights were satisfied before she was expelled. The Honorable Howard D. McKibben, U.S. District Court Judge, agreed and noted that "[t]he process plaintiff received in this case was substantially greater than that afforded to students who are subject to [expulsion]." *Maffeo*, No. 09–cv–2274–HDM–LRL, Oct. 19, 2010 Order at

2

10:8–11. Maffeo appealed and the Ninth Circuit affirmed, stating "that Jason Bach's briefs were woefully misleading by omission of material facts [and] that this appeal is wholly frivolous." *Maffeo v. Nevada*, 461 Fed. Appx. 629 n. 1 (9th Cir. 2011).

While Maffeo's action was pending, The Bach Law Firm prosecuted[2] an identical complaint on behalf of Jaremy Larson. Like Maffeo, Larson was expelled from the University of Nevada's School of Dental Medicine for poor academic performance. Like *Maffeo*, the Bach Law Firm pled causes of action under section 1983 for allegedly violating Larson's procedural and substantive due process rights. The firm also prosecuted state law causes of action for breach of contract, negligence, negligent hiring, training, and supervision, intentional infliction of emotional distress, injunctive and declaratory relief, and defamation, libel, and slander *per se*. *See Jaremy Larson v. Nevada, et al.*, No. 2:09–cv–2460–KJD–RJJ, Compl. (#1) (D. Nev. Dec. 31, 2009).

Like *Maffeo*, the University moved for summary judgment, arguing that defendants were protected by the Eleventh Amendment or qualified immunity and that Larson's due process rights were satisfied before he was expelled. The Honorable Kent J. Dawson, U.S. District Court Judge agreed and noted that Larson "was afforded more than the minimal procedural due process required for his academic dismissal." *Larson*, No. 2:09–cv–2460–KJD–RJJ, March 7, 2012 Order at 6:22–23.

The Bach Law Firm has filed identical complaints on behalf of other clients with no success. For instance, in *Megan Krainski v. Nevada, et al.*, 616 F.3d 963, 968 (9th Cir. 2010), the Honorable Sidney R. Thomas, U.S. Circuit Court Judge, affirmed the Honorable James C. Mahan's dismissal of Krainski's section 1983 and state law claims, in part because "Krainski concedes that the Nevada

---

[2] Larson filed his complaint *pro se*. After obtaining a copy of Maffeo's complaint, he removed her name and age, inserted his own, filed the complaint, and later retained The Bach Law Firm. *See Jaremy Larson v. Nevada, et al.*, No. 2:09–cv–2460–KJD–RJJ, March 27, 2012 Summ. J. Order at 9:24–26 (D. Nev. March 7, 2012). The Bach Law Firm's notice of appearance in this action was filed on May 31, 2011. *See* Doc. #14.

3

University system and its constituent institutions are agencies and instrumentalities of the State of Nevada within the meaning of the Eleventh Amendment." Nonetheless, the Bach Law firm continued to prosecute identical complaints. *See, e.g.*, *Kevin Lucey v. Nevada, et al.*, 380 Fed. Appx. 608 (9th Cir. 2010) (affirming Judge Hunt's summary judgment order on Kevin Lucey's section 1983 and state law claims); *Jonathan Chan and Karla Ford v. Texas, et al.,* No. H–12–325, 2012 WL 5832494, at *4 (S.D. Texas, Nov. 16, 2012) ("Chan and Ford received all the process that was due—and more—for their challenges to their grades and academic dismissals."); *Daniel Salus v. Nevada, et al.*, No. 10–cv–1734– GMN–GWF, Summ. J. Order (D. Nev. Dec. 17, 2012). [3]

## II.    Gamage's Complaint & Judge Navarro's Summary Judgment Order

As three of these actions were still pending, and after three had been fully adjudicated and affirmed by the Ninth Circuit, the Bach Law Firm filed[4] another identical complaint on behalf of Gamage. (*See* Compl. (#1) at 1–9). In August 2012, Gamage was "separated" (i.e., expelled) from the University of Las Vegas' Department of Chemistry Ph.D. program for plagiarism in her dissertation. This separation marked the end of an administrative process, which began when Gamage submitted a revised draft of her dissertation on February 23, 2011. This draft contained plagiarized material, taken directly from others published sources and dissertations, which were not cited by Gamage.

---

[3] The Bach Law Firm withdrew from representing Salus three days before the University moved for summary judgment because Salus allegedly failed to meet his financial obligations under his retainer agreement. See Mot. to Withdraw #21. The Bach Law Firm has also appeared in similar cases where the plaintiff has been ordered to pay a defendant's attorneys' fees under section 1988. *See, e.g.*, *George Stahl, et al. v. East Porter Country School*, — F. Supp. 2d. —, 2013, WL 5890663 (N.D. Ind. 2013).

[4] Gamage's action was filed in state court on December 16, 2011 and removed on February 22, 2012. The following actions were still pending when Gamage filed her complaint: (1) *Salus*, No. 10–cv–1734–GMN–GWF; (2) *Chan*, 2012 WL 5832494; and (3) *Larson*, No. 2:09–cv–2460–KJD–RJJ. The following actions had been fully adjudicated: (1) *Lucey*, 380 Fed. Appx. 608; (3) *Krainski*, 616 F.3d 963, 968; and (3) *Maffeo*, 461 Fed. Appx. 629.

Like *Maffeo*, *Larson*, *Lucey*, *Krainski*, *Chan*, and *Salus*, Gamage's complaint alleged that a professor, Vernon Hodge, and the University violated Gamage's procedural and substantive due process rights. (*Id.* at 7). Also like *Maffeo*, *Larson*, *Lucey*, *Krainski*, *Chan*, and *Salus*, Gamage's complaint alleged state law claims against Defendants for breach of contract, negligence, negligent hiring, training, and supervision, intentional infliction of emotional distress, injunctive and declaratory relief, and defamation, libel, and slander *per se*. (*Id.* at 4–6). Accordingly, like the six prior cases, Judge Navarro granted summary judgment on all counts in favor of the University.[5] (*See* Summ. J. Order #54).

With regard to Gamage's state law claims, Judge Navarro ruled as follows: (1) breach of contract: (a) Gamage conceded that no contract existed between her and Professor Hodge, and (b) assuming that the Student Handbook, the Conduct Code and/or the Nevada System of Higher Education Code created a contractual relationship between the University and Gamage, Gamage failed to proffer any competent evidence that the University breached the contract;[6] (2) negligence/negligent hiring, training & supervision: (a) Gamage failed to proffer any evidence establishing that the professors did anything wrong or that the University should have known that these professors should not have been in positions of responsibility, and (b) Gamage failed to proffer any evidence showing that she suffered physical harm;[7] (3) intentional and negligent infliction of severe mental distress: (a) nothing in the record supports a finding that Defendants engaged in extreme and outrageous conduct or that they acted

---

[5] Judge Navarro reached the same conclusion as the prior six cases independently. Additionally, Judge Navarro cited the same controlling authority.

[6] The Ninth Circuit reached the same conclusion in at least one of Jason Bach's prior student rights' cases. *Lucey*, 380 Fed. Appx. at 611. Similarly, Judge Navarro reached the same conclusion in at least one of Jason Bach's prior student rights' cases, *see Salus*, No. 10–cv–1734–GMN–GWF, Dec. 17, 2012 Order at 2:12, as did a court in the Southern District of Texas. *Chan*, 2012 WL 5832494, at *7 ("[C]ourts around the country have rejected similar efforts to frame a purely academic failure by a student in professional school as a state-law breach of a contractual right.") (string citation omitted).

[7] The Ninth Circuit reached the same conclusion in at least one of Jason Bach's prior student rights' cases. *Lucey*, 380 Fed. Appx. at 611 ("Likewise there is no evidence in the record to support Lucey's claim"). Similarly, Judge Navarro reached the same conclusion in at least one of Jason Bach's prior student rights' cases. *See Salus*, No. 10–cv–1734–GMN–GWF, Dec. 17, 2012 Order at 2:12–13.

intentionally or with reckless disregard to Gamage, and (b) Gamage withdrew her negligent infliction of emotional distress claim;[8] and (4) defamation, libel and slander *per se*: (a) Gamage withdrew these claims against Professor Hodge, and (b) these claims against the University are barred by N.R.S. § 41.032 discretionary immunity.[9]

With regard to Gamage's federal claims, Judge Navarro ruled as follows: (1) the Eleventh Amendment bars Gamage's suit for monetary damages against all Defendants in their official capacities;[10] (2) Gamage withdrew her *Monell* claim, which in any event would fail as a matter of law[11]; (3) the University afforded Gamage with more procedural due process than constitutionally required;[12] and (4) assuming for the purposes of summary judgment that Gamage had a property interest in her continued education, the University's decision to separate her from the program was not arbitrary or capricious.[13]

---

[8] Analogous holdings have been rendered Jason Bach's prior students' rights cases. *See, e.g.*, *Salus*, No. 10–cv–1734–GMN–GWF, Dec. 17, 2012 Order at 2:13; *Chan*, 2012 WL 5832494, at *7 ("[The University's] grading was not 'extreme and outrageous,' as required to recover for intentional infliction of emotional distress under Texas law.") (citation omitted).

[9] At least two courts who have considered identical claims brought by Jason Bach on behalf of other students have declined to exercise jurisdiction over these claims in the interest of judicial economy. *See Chan*, 2012 WL 5832494, at *7; *Larson*, No. 2:09–cv–2460–KJD–RJJ, March 7, 2012 Order at 10:10–13.

[10] This conclusion was independently reached by several courts in Jason Bach's related students' rights cases. *See, e.g.*, *Krainski*, 616 F.3d at 967–68; *Maffeo*, 461 Fed. Appx. 629; *Salus*, No. 10–cv–1734–GMN–GWF, Dec. 17, 2012 Order at 2:5.

[11] The Ninth Circuit reached the same conclusion in at least one of Jason Bach's prior student rights' cases. *See Krainski*, 616 F.3d at 968 ("[T]he Supreme Court has expressly declined to extend *Monell's* theory of municipal liability under § 1983 to state entities") (citation omitted);

[12] Several courts examining Jason Bach's challenges to the University of Nevada, Las Vegas' expulsion procedures independently reached the same conclusion. *See, e.g.*, *Maffeo*, No. 09–cv–2274–HDM–LRL, Oct. 19, 2010 Order at 10:8–11; *Larson*, No. 2:09–cv–2460–KJD–RJJ, March 7, 2012 Order at 6:22–23; *Lucey*, 380 Fed. Appx. at 610; *Krainski*, 616 F.3d at 971; *see also Chan*, 2012 WL 5832494, at *4 (holding the same with regard to Texas Southern University's expulsion procedures).

[13] This conclusion was independently reached by several courts in Jason Bach's related students' rights cases. *Maffeo*, No. 09–cv–2274–HDM–LRL, Oct. 19, 2010 Order at 11:11–12; *Salus*, No. 10–cv–1734–GMN–GWF, Dec. 17, 2012 Order at 2:9; *Krainski*, 616 F.3d at 970–71; *Larson*, No. 2:09–cv–2460–KJD–RJJ, March 7, 2012 Order at 8:3; *Chan*, 2012 WL 5832494, at *5.

Finally, Judge Navarro also held that the Gamage's injunctive and declaratory relief claims failed because summary judgment was granted on all substantive claims, leaving no justiciable controversy.[14] Accordingly, Gamage's complaint was dismissed.

The procedural due process claim was the only claim that required in-depth analysis of Gamage's failure to proffer evidence to create a genuine issue of fact. The portion of Judge Navarro's order dealing with this issue bears repeating here:

> When a student is suspended from a public school or university for disciplinary reasons due process requires "that the student be given oral or written notice of the charges against [her] and, if [she] denies them, an explanation of the evidence the authorities have and an opportunity to present [her] side of the story." *Goss v. Lopez*, 419 U.S. 565, 581 (1975). Such complete procedural safeguards do not apply when a student is dismissed for failure to meet academic standards. *Horowitz*, 435 U.S. at 84. Procedural due process is satisfied for the dismissal of a student for academic reasons (1) if the student had prior notice of faculty dissatisfaction with her performance and of the possibility of dismissal, and (2) if the decision to dismiss the student was careful and deliberate. *Id*. at 85.

> Without reaching the conclusion whether Plaintiff's removal from the Program was for an academic reason or a disciplinary reason, the Court finds the Defendants provided Gamage more than the procedural due process she was entitled to if she had been removed from the Program solely for disciplinary reasons. Gamage does not dispute the fact that she received notice of the allegations of plagiarism or notice of any of the hearings. Gamage asserts that she was never given an opportunity to actually appeal the finding of plagiarism, but only the sanction and that she was denied an advisor at the October 20, 2011 Academic Appeal Board hearing.

> The Court finds, however, the Academic Integrity Appeal Panel Internal Memorandum dated October 21, 2011 completely contradicts her claim. The Academic Appeal Board found Gamage responsible for plagiarism based on: (1) documentation provided by Dr. Hodge that showed plagiarized sections of her dissertation; (2) documentation and discussion showing Gamage was given multiple opportunities to correct the issues; and (3) under direct question from the panel, Gamage admitted to making repeated "mistakes," but showed a lack of knowledge of the real problem in her plagiarism, or that it was her responsibility to know how to correct it. Additionally, Gamage does not deny that she submitted a written statement to the Academic Appeal

---

[14] Judge McKibben reached the same conclusion in *Maffeo*. *Maffeo*, No. 09–cv–2274–HDM–LRL, Oct. 19, 2010 Order at 10–14.

Board providing an explanation and evidence of why she feels she did not commit plagiarism.

The Court also finds Gamage's assertion that the University denied her advisor at the Academic Appeal Board unfounded. Although, Plaintiff admits she reviewed the Conduct Code and Misconduct Policy provided to her by Burns, she also admits she never once asked the University if she could have an advisor attend with her the Academic Appeal Board hearing. Gamage not only received notice of the charges against her but also was provided an opportunity to dispute them and provide the Academic Appeal Board with her side of the story. Contrary to Plaintiffs contentions, the record is replete with competent evidence that Gamage was afforded all her due process she was entitled to receive.

Last, the Court finds no evidence in the record that the University and/or Dr. Hodge failed to follow the University's regulations. The University and Dr. Hodge followed the Conduct Code and the Misconduct Policy. Plaintiff has failed to put forth any evidence that demonstrates any failure by the Defendants to follow University policies. Gamage was notified by Dr. Hodge of the plagiarism allegations. Dr. Hodge filed the appropriate Academic Misconduct Report. Gamage met with OSC regarding the allegations of plagiarism. Gamage requested a hearing regarding the allegations of plagiarism. Gamage had notice of the Conduct Hearing. Gamage had an opportunity to be heard at the Conduct Hearing. At the Conduct Hearing, Gamage did have an advisor. Gamage did have an opportunity to tell her side of the story as to why she should not be removed from the Program. The Conduct Hearing affirmed the recommendation of her Committee, Chair, and College of Science recommendation that she be removed from the Program. Gamage had another opportunity to appeal the sanctions. In short, Plaintiff has not put forth any competent evidence to demonstrate how a clearly established statutory or constitutional right was violated. The process plaintiff received was substantially greater than that afforded to students who are subject to academic proceedings. Plaintiff received both written notice and an opportunity to respond. *See Goss*, 419 U.S. 581.

Consequently, the Court finds that Gamage has failed to make out her claim for a procedural due process violation, having received notice and multiple hearings. Finding no triable issue of material fact remains on her procedural due process claim against the Defendants, the Court dismisses Gamage's procedural due process claim against all Defendants, with prejudice.

(Summ. J. Order (#54) at 12–13). Three Ninth Circuit panels and several district court judges from the

District of Nevada and Southern District of Texas reached the same conclusion on prior occasions.

*See Krainski*, 616 F.3d at 971–72; *Lucey*, 380 Fed. Appx. at 610–11; *Maffeo*, No. 09–cv–2274–HDM–

LRL, Oct. 19, 2010 Order at 8–10, *aff'd* 461 Fed. Appx. 629; *Larson*, No. 2:09–cv–2460–KJD–RJJ,

March 7, 2012 Order at 6–8; *Chan*, 2012 WL 5832494, at *7; *Salus*, No. 10–cv–1734–GMN–GWF, Dec. 17, 2012 Order at 2:9.

One month after Judge Navarro entered summary judgment against Gamage, Gamage substituted counsel and appealed Judge Navarro's decision to the Ninth Circuit. Now, the University moves for an award of attorney's fees. This marks the first time that the University has moved for an award of attorney's fees against The Bach Law Firm or its clients.

## LEGAL STANDARD

Our legal system generally requires each party to bear its own litigation expenses, including attorney's fees whether she wins or loses. This principle is so firmly entrenched that it is known as the "American Rule." *See Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 247 (1975). Congress has authorized courts to deviate from this rule only in limited circumstances. In the context of a civil rights action, two statutes permit the court to award attorney's fees to the prevailing party: 42 U.S.C. § 1988(b) and 28 U.S.C. § 1927.

Section 1988(b) applies to the parties, not legal counsel, and authorizes the court to award "the prevailing party . . . a reasonable attorney's fee as part of the costs." The court's decision to award fees under section 1988(b) is discretionary. *See* 42 U.S.C. § 1988(b). Section 1988(b) creates a double standard. Under section 1988(b), prevailing plaintiffs "should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." *Mayer v. Wedgewood Neighborhood Coal*., 707 F.2d 1020, 1021 (9th Cir. 1983) (per curiam) (citing *Christiansburg*, 434 U.S. 416–17). Prevailing defendants should only recover attorney's fees where the plaintiff prosecuted an "unreasonable, frivolous, meritless or vexatious" action. *Id*. at 421; *Ellis v. Cassidy*, 625 F.2d 227, 230 (9th Cir. 1980). "An action becomes frivolous when the result appears obvious or the arguments are wholly without

merit." *Galen v. Cnty of Los Angeles*, 477 F.3d 652, 666 (9th Cir. 2007) (citing *Christiansburg*, 434 U.S. at 422).

By contrast, 28 U.S.C. § 1927 applies to legal counsel, not the parties, and authorizes the court to award costs, expenses, and attorney's fees against "[a]ny attorney . . . who so multiplies the proceedings in any case[,] unreasonably and vexatiously." 28 U.S.C. § 1927. To award fees under section 1927, the court must find that an attorney acted "recklessly or in bad faith." *United States v. Blodgett*, 709 F.2d 608, 610 (9th Cir. 1983); *Barnd v. City of Tacoma*, 664 F.2d 1339, 1343 (9th Cir. 1982).

The Ninth Circuit has made clear that "recklessness suffices for [section] 1927." *Fink v. Gomez*, 239 F.3d 989, 993–94 (9th Cir. 2001). Indeed, "a finding that an attorneys recklessly raised a **frivolous** argument which resulted in the multiplication of the proceedings is also sufficient to impose sanctions under § 1927." *In re Girardi*, 611 F.3d 1027, 1061 (9th Cir. 2010) (emphasis original) (citing *B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1107 (9th Cir. 2002) ("[R]ecklessness plus knowledge was sufficient to justify the imposition of § 1927 sanctions.") When an attorney recklessly continues to prosecute a case, even after it becomes apparent through discovery that there was insufficient evidence to support the plaintiff's claims, sanctions under section 1927 are warranted. *Girardi*, 611 F.3d at 1064 (citing *Edwards v. Gen. Motors Corp.*, 153 F.3d 242, 247 (affirming section 1927 sanctions for the "willful continuation of a suit known to be meritless").

## DISCUSSION

The court finds that Gamage's action was "unreasonable, frivolous, meritless or vexatious" and that the Bach Law Firm prosecuted Gamage's action "recklessly [and] in bad faith." *Christiansburg Garment*, 434 U.S. at 421; *Blodgett*, 709 F.2d at 610. The court's recommendation proceeds in four parts: a finding that (1) Gamage should be liable for attorney's fees under section 1988(b); (2) The Bach Law Firm should be jointly and severally liable for attorney's fees under section 1927; and (3) the

reasonable amount of fees should total $39,962.50. Finally, the court briefly addresses several miscellaneous matters: the University's request for additional monetary relief pursuant to Federal Rule of Civil Procedure 54, Nevada Rule of Civil Procedure 68, and Nev. Rev. Stats. §§ 17.115, 18.010; and why the court did not defer ruling on the University's motion.

## I.   Gamage should be Liable for Attorney's Fees under 42 U.S.C. § 1988(b)

The court begins its recommendation by finding that that Gamage should be held liable for attorney's fees under 42 U.S.C. § 1988(b). The court's analysis under section 1988(b) proceeds in two parts: (1) a finding that Gamage's action presents "exceptional circumstances" and was "unreasonable, frivolous, meritless or vexatious;" (2) a discussion of the arguments that Gamage and The Bach Law Firm make in opposition to the University's motion for attorney's fees.

### A.   *Gamage's Action Presents "Exceptional Circumstances"*

Prevailing defendants only recover attorney's fees in "exceptional circumstances" where the plaintiff prosecuted an "unreasonable, frivolous, meritless or vexatious" action. *Christiansburg*, 434 U.S. 416–17; *Harris v. Maricopa Cnty.*, 631 F.3d 963, 971 (9th Cir. 2011) (quoting *Barry v. Fowler*, 902 F.2d 770, 773 (9th Cir. 1990)). A case is "frivolous" when "the 'result is obvious or the . . . arguments of error are wholly without merit.'" *Karam v. City of Burbank*, 352 F.3d 1188, 1195 (9th Cir. 2003).

This strict standard serves to uphold "Congress' policy of promoting vigorous prosecution of civil rights violations." *Miller v. L.A. Cnty. Bd. of Educ.*, 827 F.2d 617, 619 (9th Cir. 1987) (citations omitted). The Supreme Court has cautioned lower courts to "resist the understandable temptation to engage in post hoc reasoning by concluding that, because a plaintiff did not ultimately prevail, [her] action must have been unreasonable or without foundation." *Christiansburg*, 434 U.S. at 421–22.

11

Here, there is no doubt that Gamage's action presents "exceptional circumstances" and was "unreasonable, frivolous, meritless or vexatious." *Christiansburg*, 434 U.S. 416–17; *Harris*, 631 F.3d at 971. What is particularly exceptional about Gamage's action is that her own legal counsel, The Bach Law Firm, developed a body of law—consisting of both binding and persuasive Ninth Circuit authority[15]—that undermines each of the causes of action that Gamage brought against the University. Gamage's complaint stated six counts: (1) procedural and substantive due process violations under the Fifth and Fourteenth Amendments, (2) breach of contract, (3) negligence, negligent hiring, training, and supervision; (4) intentional infliction of emotional distress; (5) injunctive and declaratory relief; (6) and defamation, libel, and slander *per se*. (Compl. (#1) at 4–7). The Bach Law Firm's prior experience in prosecuting virtually identical cases with no success demonstrates that each of these causes of action was "unreasonable, frivolous, meritless or vexatious."

With regard to the federal claims, The Bach Law Firm's representative cases stand for the propositions that Gamage's complaint is (1) barred by the Eleventh Amendment;[16] (2) not cognizable under *Monell*[17]; (3) unfounded under the procedural due process clause because the University affords more process than constitutionally required;[18] and (4) implausible under the substantive due process clause because the University's decision to expel students from the University has not yet proven

---

[15] Because *Krainski*, 616 F.3d 968 is a published decision, it is binding. Because *Lucey*, 380 Fed. Appx. 608 and *Maffeo*, 461 Fed. Appx. 629 are substantially similar, if not identical, they are highly persuasive. *See* FED. R. APP. P. 36–3 (citing Fed. R. App. P. 32–1).

[16] *See, e.g.*, *Krainski*, 616 F.3d at 967–68; *Maffeo*, 461 Fed. Appx. 629; *Salus*, No. 10–cv–1734–GMN–GWF, Dec. 17, 2012 Order at 2:5.

[17] *See Krainski*, 616 F.3d at 968 ("[T]he Supreme Court has expressly declined to extend *Monell's* theory of municipal liability under § 1983 to state entities") (citation omitted);

[18] *See, e.g.*, *Maffeo*, No. 09–cv–2274–HDM–LRL, Oct. 19, 2010 Order at 10:8–11; *Larson*, No. 2:09–cv–2460–KJD–RJJ, March 7, 2012 Order at 6:22–23; *Lucey*, 380 Fed. Appx. at 610; *Krainski*, 616 F.3d at 971; *see also Chan*, 2012 WL 5832494, at *4 (holding the same with regard to Texas Southern University's expulsion procedures).

12

arbitrary or capricious in any case brought by The Bach Law Firm.[19] Nonetheless, Gamage prosecuted procedural and substantive due process claims, and suggested that she may have a *Monell* claim.

The Bach Law Firm's prior experience in prosecuting virtually identical cases has also proven that Gamage's state law claims were "groundless or without foundation." *See Gibson v. Office of Atty. Gen., State of Cal.*, 561 F.3d 920, 929 (9th Cir. 2009). Prior district and appellate courts universally rejected The Bach Law Firms' student–rights claims for breach of contract,[20] negligence,[21] intentional infliction of emotional distress,[22] defamation,[23] and injunctive relief.[24]

Despite this binding and persuasive authority, Gamage proceeded with this action even though the result was obvious and the arguments were "wholly without merit." *See Galen*, 477 F.3d at 666. In *Maffeo*, the Ninth Circuit had already dubbed arguments like Gamage's "frivolous." *Maffeo*, 461 Fed. Appx. at 629 n. 1. In *Krainski*, Gamage's counsel had already conceded that the University of Nevada, Las Vegas is immune from suit under the Eleventh Amendment. *Krainski*, 616 F.3d at 967–68. In *Chan*, a district court judge in the Southern District of Texas had already told Gamage's counsel that "courts around the country have rejected similar efforts to frame a purely academic failure by a student in professional school as a state-law breach of a contractual right." *Chan*, 2012 WL 5832494, at *7 (string

---

[19] *Maffeo*, No. 09–cv–2274–HDM–LRL, Oct. 19, 2010 Order at 11:11–12; *Salus*, No. 10–cv–1734–GMN–GWF, Dec. 17, 2012 Order at 2:9; *Krainski*, 616 F.3d at 970–71; *Larson*, No. 2:09–cv–2460–KJD–RJJ, March 7, 2012 Order at 8:3; *Chan*, 2012 WL 5832494, at *5.

[20] *See, e.g.*, *Lucey*, 380 Fed. Appx. at 611; *Salus*, No. 10–cv–1734–GMN–GWF, Dec. 17, 2012 Order at 2:12; *Chan*, 2012 WL 5832494, at *7 ("[C]ourts around the country have rejected similar efforts to frame a purely academic failure by a student in professional school as a state-law breach of a contractual right.") (string citation omitted).

[21] *See, e.g.*, *Lucey*, 380 Fed. Appx. at 611 ("Likewise there is no evidence in the record to support Lucey's claim"); *Salus*, No. 10–cv–1734–GMN–GWF, Dec. 17, 2012 Order at 2:12–13.

[22] *See, e.g.*, *Salus*, No. 10–cv–1734–GMN–GWF, Dec. 17, 2012 Order at 2:13; *Chan*, 2012 WL 5832494, at *7 ("[The University's] grading was not 'extreme and outrageous,' as required to recover for intentional infliction of emotional distress under Texas law.") (citation omitted).

[23] *See, e.g.*, *Chan*, 2012 WL 5832494, at *7; *Larson*, No. 2:09–cv–2460–KJD–RJJ, March 7, 2012 Order at 10:10–13.

[24] *See, e.g.*, *Maffeo*, No. 09–cv–2274–HDM–LRL, Oct. 19, 2010 Order at 10–14.

citation omitted).

In addition to being legally unfounded, Gamage's action was factually unfounded. Gamage alleged the University did not provide her with an opportunity to dispute the plagiarism charges. (Compl. (#1) at ¶¶ 52–59); (Pl.'s Opp'n to Mot. Summ. J. (#34) at 12:2–4) ("Plaintiff was not allowed to participate in a student conduct hearing, she was not allowed to present her version of the events in question, she was not allowed to be accompanied by an advisor, or question witnesses.") This was false. (*See* Burns Decl. (#33) Exhibit A at ¶¶ 18, 21–22). Gamage knew it was false. (*See id.*) And, Gamage admitted that it was false. (*See* Internal Mem. (#33-5) Exhibit L at 11) ("Under direct questioning from this panel, Ms. Smaarasekera admitted to making repeated 'mistakes'"); (Gamage Depo. (#30) Exhibit D at 68:8–17) ("Q. The Academic Integrity Appeal Board met in October 11; is that correct? A. Yes. Q. And you were allowed to attend the hearing? A. Yes. Q. And you testified [–] they asked you – the panel asked you questions? A. Yes. Q. Were you given an opportunity to respond? A. Yes.").

Gamage also alleged the University "failed to allow Plaintiff to be represented and/or assisted by an advisor" during her academic integrity hearing. (Compl. (#1) at ¶ 15). This was false; Gamage knew it was false; and Gamage admitted that it was false. (*Id.* at 66:21–23) ("Q. Did you ever ask for an advisor at your October 20th Academic Integrity Appeal hearing? A. No.).

Gamage also alleged that she never plagiarized portions of her dissertation. (Compl. (#1) at ¶ 17). This too was false; and Gamage admitted that it was false. (Gamage Depo. (#30) Exhibit D at 65:23–66:4) ("Q. [D]o you not say 'I agree that I had not fully conformed to UNLV plagiarism policy'? Did you not write that? Yes or no? Did you write that? A. I'm going to object. Asked and answered. She already stated that she wrote that document.").

Gamage's deposition produced similar testimony with regard to her state law claims. When discussing Gamage's intentional infliction of emotional distress claim, Gamage stated the following:

14

> Q.   [Y]our allegations include that you've suffered emotional distress from this incident; is that correct?
> A.   Yes.
> Q.   Are you currently under the care of a doctor?
> A.   No.
> Q.   Did you take any medication related to your emotional distress?
> A.   No.
> Q.   What doctor did you see regarding your emotional distress?
> A.   I met Dr. Shauna Landis, the counselor at UNLV Student Health Center, because I wanted to talk to somebody to get some help. Because this is the first time in my life somebody made allegations against me. I have been a really good student, all A pluses. I have a good record. So I was, like, so disturbed. I didn't plagiarize. So I just went and talked to her. She was a nice lady.
> Q.   So what kind of help were you seeking from the counselor?
> A.   To get some advice, like how to handle this kind of situation, why are they doing that to me . . . .

(Gamage Depo. (#30-2) at 84:16–85:14). Later in the deposition Gamage testified to (1) fainting three times and consulting with a medical doctor who prescribed no medication, no follow up visits, and advised Gamage to "think about your kids and your family," (*id*. at 86:4–5; 87:2–3), and (2) being "really hurt" and "depressed . . . [b]asically every day" because she works "with all Ph.D.'s" (*id*. at 87:5–9). Gamage never sought treatment for being "depressed" or "really hurt." (*Id*.)

Gamage's complaint also alleges that she suffered "great mental and emotional harm" including "severe and clinical depression, anxiety, loss of sleep, and change of appetite." (Compl. (#1) at ¶ 33). In support of this allegation, Gamage testified that she suffers from "severe headaches" that "last about three, four hours." (Gamage Depo. (#30-2) at 91:22–25). However, during Gamage's deposition she conceded that she has not consulted a doctor for these "severe" injuries. (*Id*. at 92:4).

When asked "what specific document" serves as the basis of Gamage's breach of contract claim, Gamage responded, saying: "[Dr. Hodge] made false allegations against me, saying he has given me so many chances, and I didn't do by job. And they filed this report without even telling me." (*Id*. at 89:16–25).

15

The court will not expend additional time demonstrating how the rest of Gamage's state law claims are "unreasonable, frivolous, meritless or vexatious." *Christiansburg*, 434 U.S. 416–17.

### B.   *Gamage & The Bach Law Firm's Arguments in Oppositions are Meritless*

Having determined that Gamage's complaint is "unreasonable, frivolous, meritless or vexatious," the court now considers the arguments that Gamage and The Bach Law Firm make in opposition to the University's motion for attorney's fees.

Gamage makes three arguments in opposition to the University's motion: (1) the court's denial of the University's motion to dismiss suggests that the action was meritorious;[25] (2) "the Court never articulated exactly what specific instance of plagiarism was committed;"[26] and (3) "the Court did not provide Gamage an adequate opportunity to present the facts that were not developed until after Defendants filed their motion for summary judgment."[27] Additionally, The Bach Law Firm makes three arguments in opposition to the University's motion: (1) the Supreme Court's decision in *Goss v. Lopez*, 419 U.S. 574 (1975) recognizes that public university students' have due process rights;[28] (2) "[l]ooking at the facts of this case, it is reasonable for Gamage to believe that her civil rights were violated by the Defendants;"[29] and (3) several of Gamage's claims were required additional briefing, which indicates that they were not frivolous.[30] These arguments are meritless. Each is addressed below.

First, the court's denial of the University's motion to dismiss does not indicate whether Gamage's action is unreasonable, frivolous, meritless or vexatious under section 1988(b). Gamage argues that "the fact that Gamage defeated Defendants' motion for judgment on the pleadings weighs

---

[25] (Gamage's Opp'n (#66) at 6:16–18).
[26] (*Id*. at 7:4–5).
[27] (*Id*. at 7:11–13).
[28] (The Bach Law Firms' Opp'n (#67) at 4:18–28).
[29] (*Id*. at 5:5–6).
[30] (*Id*. at 5:11–15).

16

very heavily against an award of attorney fees." In support of this proposition, Gamage repeatedly cites *Jensen v. Stangel*, 762 F.2d 815, 818 (9th Cir. 1985) (per curiam). (*See* Gamage's Opp'n (#66) at 2:19, 6:17). This citation is erroneous. In *Jensen*, the court stated that the plaintiff's success in opposing both a motion to dismiss and a motion for summary judgment merely "suggest[s]" that the plaintiff's claims were not without merit. *Id.*

Here, Gamage won a motion to dismiss and lost a motion for summary judgment. Under *Jensen*, Gamage's short-lived success does not "weigh heavily" against awarding attorney's fees.[31] Even if it did, the court would still recommend awarding attorney's fees to the University. When examining a motion to dismiss, the court's review is generally limited to the complaint's four corners. *See* FED. R. CIV. P. 12(d). This means that the court could not have considered Gamage's deposition testimony, in which she provides testimony showing that her claims are baseless.

Second, Gamage argues that attorney's fees should not be awarded because "the Court never articulated exactly what specific instance of plagiarism was committed." (Gamage's Opp'n (#66) at 7:4–5). This argument is meritless. Even if Gamage purports to not fully understand what plagiarism is, she admitted that she did it. (*See* Gamage Depo. (#30) Exhibit D at 65:23–66:4) ("Q. [D]o you not say 'I agree that I had not fully conformed to UNLV plagiarism policy'? Did you not write that? Yes or no? Did you write that? A. I'm going to object. Asked and answered. She already stated that she wrote that document.").

Gamage correctly admitted to plagiarizing. The court has reviewed the record and found several instances of plagiarism, including the following. In December 2007, Deli Wang submitted a dissertation to the faculty of Marine and Atmospheric Science at Stony Brook University. (*See* Wang Dissertation (#33-3) at 10). Wang's dissertation contains the following passage:

---

[31] Neither "weighs" nor "heavily" were ever used in *Jensen*. Defense counsel invented this rule of law.

> Generally the concentrations of Mo in natural water systems are balanced between several major sources (eg. Mo deposits) and sinks. Weathering reactions are the major source of Mo into water systems [36,37], and sink involve a combination of algal update, and reductive processes followed by removal via coprecipitaion with Fe and Mn oxides or oxhydroxides [38 40].

(*Id.*) Years later, Gamage submitted a dissertation to the Department of Chemistry at the University of Nevada, Las Vegas. Like Wang's dissertation, Gamage's dissertation contains the following passage:

> Generally the concentrations of Mo in natural water systems are balanced between several major sources (eg. Mo deposits) and sinks. Weathering reactions are the major source of Mo into water systems [36,37], and sink involve a combination of algal update, and reductive processes followed by removal via coprecipitaion with Fe and Mn oxides or oxhydroxides [38 40].

(Gamage Dissertation (#33-3) at 6). Gamage failed to cite Wang. This is plagiarism. *See* Merriam-Webster's Collegiate Dictionary 886 (10th ed. 2001) ("[T]o steal and pass off (the ideas or words of another) as one's own").

Third, Gamage argues that attorney's fees should not be awarded because "the Court did not provide Gamage an adequate opportunity to present the facts that were not developed until after Defendants filed their motion for summary judgment." (Gamage's Opp'n (#66) at 7:11–13). This argument is meritless. Gamage admitted to plagiarizing. Gamage admitted that she received a hearing. Gamage admitted that she had an opportunity to respond. (Gamage Depo. (#30) Exhibit D at 68:8–17). Even if these facts had not been established, The Bach Law Firm has thoroughly demonstrated that the University is immune from suit under the Eleventh Amendment. *See, e.g.*, *Krainski*, 616 F.3d at 967–68. Nothing more needs to be "developed." (*See also* Hearing Trans. (#51) at 21–24) (explaining how The Bach Law Firm was afforded multiple opportunities to develop the facts but failed to do so).

Fourth, The Bach Law Firm argues that attorney's fees should not be awarded because *Goss v. Lopez*, 419 U.S. 574 (1975) recognizes that public university students' have due process rights. (The Bach Law Firms' Opp'n (#67) at 4:18–28). This argument is inapposite. No court in any of The Bach

Law Firm's previous six student–rights cases failed to recognize that students in public universities have a property interest in public education that is protected by the due process clause. On the contrary, in both this case and in *Maffeo*, Judge Navarro and Judge McKibben quoted *Goss* and determined that both students received "substantially greater" process than constitutionally required. *Maffeo*, No. 09–cv–2274–HDM–LRL, Oct. 19, 2010 Order at 8:16–20, 10:9–10; (Summ. J. Order (#54) at 12:3–7, 13). In *Maffeo*, the Ninth Circuit affirmed, and called the appeal "frivolous." *See Maffeo*, 461 Fed. Appx. 629, n.1.

Fifth, The Bach Law Firm argues that fees should not be awarded because "[l]ooking at the facts of this case, it is reasonable for Gamage to believe that her civil rights were violated by the Defendants." (The Bach Law Firms' Opp'n (#67) at 5:5–6). This argument is frivolous; and for the reasons discussed above, it does not merit further attention.

Sixth, The Bach Law Firm argues that fees should not be awarded because several of Gamage's claims were (1) not dismissed until summary judgment and (2) required additional briefing, which indicates that they were not frivolous. (*Id*. at 5:11–15). These arguments are also meritless. As discussed above, a claim is not frivolous simply because it survives both a motion to dismiss and a motion for summary judgment. *See Jensen*, 762 F.2d at 818. On the contrary, surviving both pretrial motions merely "suggests" that the claim may not be frivolous. *Id*.

Gamage's action never reached this low threshold. Additionally, in light of Gamage's failure to cite binding and highly persuasive adverse authority, the court will not infer that the additional briefing militates in favor of finding that Gamage's claims are meritorious. Therefore, the court recommends awarding attorney's fees against Gamage under section 1988(b).

## II.      The Bach Law Firm should be Liable for Attorney's Fees under 28 U.S.C. § 1927

The court also recommends ordering The Bach Law Firm to pay attorney's fees under 28 U.S.C. § 1927. If an attorney "unreasonably and vexatiously" multiplies the proceedings the court may require counsel to "satisfy personally the excess costs, expenses, and attorney's fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. To do so, the court must find that counsel acted recklessly or in bad faith." *Blodgett*, 709 F.2d at 610.

The Bach Law Firm satisfied this standard. In opposition to the University's motion for attorney's fees, The Bach Law Firm asserts that it "has made no reckless misstatements of law or fact" and that "Defendants in this case have pointed to no improper purpose or bad faith on part of Plaintiff's counsel in bringing this lawsuit." (Def.'s Opp'n (#67) at 5:21, 5–6). The court disagrees. In fact, the assertion that The Bach Law Firm "made no reckless misstatements of law or fact" is itself a misrepresentation.

It is no secret in this district—or among the Ninth Circuit—that The Bach Law Firm's attempts to prosecute the University for expulsions are barred by the Eleventh Amendment. In *Maffeo*, Judge McKibben held that The Bach Law Firm's action was barred by the Eleventh Amendment. The Bach Law Firm appealed. The Ninth Circuit affirmed; and a per curiam panel stated "that Jason Bach's briefs were woefully misleading by omission of material facts [and] that this appeal is wholly frivolous." *Maffeo*, 461 Fed. Appx. at 629 n. 1.

Later, The Bach Law Firm prosecuted an identical action on behalf of Megan Krainski. In *Krainski*, Judge Mahan held that The Bach Law Firm's action was barred by the Eleventh Amendment. The Bach Law Firm appealed. Again, the Ninth Circuit affirmed; and Judge Thomas noted for the record that "Krainski concedes that the Nevada University system and its constituent institutions are agencies and instrumentalities of the State of Nevada within the meaning of the Eleventh Amendment." *Krainski*,

616 F.3d at 967–68.

Despites these decisions, The Bach Law Firm prosecuted identical complaints on behalf of at least four other similarly situated clients. *See, e.g.*, *Salus*, No. 10–cv–1734–GMN–GWF, Dec. 17, 2012 Order at 2:5 (dismissing Salus' complaint under the Eleventh Amendment, *inter alia*). None of these cases were successful. In fact, as noted above (*see supra* n.6–n.14), the totality of The Bach Law Firm's prior student–rights cases stand for the proposition that Gamage's action is baseless as a matter of law.

Nonetheless, The Bach Law Firm filed Gamage's complaint, which Judge Navarro dismissed under the Eleventh Amendment. Now, The Bach Law Firm represents that that it "has made no reckless misstatements of law or fact." (Def.'s Opp'n (#67) at 5:21). In light of *Maffeo*, *Larson*, *Lucey*, *Krainski*, *Chan*, and *Salus*, this assertion is itself a misrepresentation. The Bach Law Firm's prior prosecution of virtually identical complaints has produced a body of law that directly contradicts the arguments The Bach Law Firm made[32]—and continues to make[33]—on behalf of Gamage.

Under Nevada Rule of Professional Conduct 3.3(a)(2), The Bach Law Firm has a duty to cite adverse authority, in part "to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1. Similarly, under Federal Rule of Civil Rule 11(b)(2), The Bach Law Firm represented that its "legal contentions are warranted by existing law" or are "nonfrivolous" arguments for extending current law. Nonetheless, The Bach Law Firm never cited any of these cases. (*See generally* #17, #34). Instead, it asserted the same argument that a per curiam Ninth Circuit panel rejected as "frivolous," *see Maffeo*, 461 Fed. Appx. at 629 n. 1, and adopted a stance—(*viz.*, that Gamage's complaint is not barred by the Eleventh Amendment)—that The Bach Law Firm knew was

---

[32] (*See, e.g.*, Pl.'s Opp'n to. Mot. to Dismiss #17); (Pl's Opp'n to Mot. Summ. J. #34).
[33] (The Bach Law Firm's Opp'n (#67) at 6:23–27) ("Plaintiff was falsely accused of plagiarism by her graduate committee. The student conduct officer denied her an opportunity to defend against the allegations of plagiarism by forcing her to accept responsibility for academic misconduct. . . .").

21

wrong. *See Krainski*, 616 F.3d at 967–68 ("Krainski concedes that the Nevada University system and its constituent institutions are agencies and instrumentalities of the State of Nevada within the meaning of the Eleventh Amendment.").

Accordingly, the court finds that The Bach Law Firm's arguments[34] in opposition to the University's motion for attorney's fees are reckless and made in bad faith. This is sufficient to impose attorney's fees, costs, and expense under section 1927. *See In re Girardi*, 611 F.3d at 1061 (citing *B.K.B.*, 276 F.3d at 1107 ("[A] finding that an attorneys recklessly raised a **frivolous** argument which resulted in the multiplication of the proceedings is also sufficient to impose sanctions under § 1927.") (emphasis original).

Additionally, the court also finds that The Bach Law Firm's prosecution of Gamage's complaint was reckless. At least six district court judges and three Ninth Circuit panels told The Bach Law Firm that the University is protected by the Eleventh Amendment. The Bach Law Firm disregarded these rulings. This was reckless. *See* BLACK'S LAW DICTIONARY (9th ed. 2009), reckless ("[H]eedless; rash. • Reckless conduct is much more than mere negligence: it is a gross deviation from what a reasonable person would do.").

The court also finds that The Bach Law Firm's prosecuted Gamage's complaint in bad faith. As shown above, when The Bach Law Firm filed Gamage's complaint, it knew that the University is protected by the Eleventh Amendment. However, The Bach Law Firm filed and prosecuted this actions despute this knowledge. This constitutes bad faith.

---

[34] As discussed above, The Bach Law Firm proffered two arguments in opposition to the University's motion for attorney's fees: (1) The Bach Law Firm "has made no reckless misstatements of law or fact" and (2) "Defendants in this case have pointed to no improper purpose or bad faith on part of Plaintiff's counsel in bringing this lawsuit." (Def.'s Opp'n (#67) at 5:21, 5–6).

Therefore, the court recommends that Gamage, The Bach Law Firm, and Jason Bach be held jointly and severally liable with Gamage for the University's attorney's fees under 28 U.S.C. § 1927.

**III.     The Reasonable Amount of Fees Should Total $39,962.50**

Having determined that Gamage, The Bach Law Firm, and Jason Bach should be financially liable for attorney's fees, the court now considers the reasonable amount of attorney's fees that should be awarded. The court's analysis proceeds in four steps: (1) a discussion of the law governing the calculation of attorney's fees; (2) a finding that the University's hourly rate is reasonable; and (3) a finding that Gamage's action became clearly frivolous on at least January 1, 2013, which was two weeks after Gamage's deposition; and (4) a finding that the University subsequently incurred $39,962.50 in unnecessary attorney's fees. Each is discussed below.

**A.     *Calculating Reasonable Attorney's Fees under 42 U.S.C. § 1988(b)***

When awarding attorney's fees under section 1988(b), the court must effect section 1983's underlying congressional policy: "to 'make it easier for a plaintiff of limited means to bring a meritorious [civil rights] suit'" while "'deter[ing] the bringing of lawsuits without foundation.'" *Christiansburg*, 434 U.S. at 420 (congressional citations omitted); *see also Miller*, 827 F.2d at 619 (articulating the policy as "promoting vigorous prosecution of civil rights violations.").

To implement this policy, the Supreme Court established a but-for test that applies to prevailing defendants: "Section 1988 allows a defendant to recover reasonable attorney's fees incurred because of, but only because of, a frivolous claim. Or what is the same thing stated as a but-for test: Section 1988 permits the defendant to receive only the portion of his fees that he would not have paid but for the frivolous claim." *Fox v. Vice*, 131 S. Ct. 2205, 2215 (2011); *Harris*, 631 F.3d at 971.

When calculating attorney's fees that flow from frivolous claims, the court begins with the lodestar figure. The lodestar figure is calculated by "multiplying the hours spent on a case by a

23

reasonable hourly rate of compensation for each attorney involved." *Penn. v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 563 (1986). "A 'strong presumption' exists that the lodestar figure represents a 'reasonable' fee, and upward adjustments of the lodestar are proper only in 'rare' and 'exceptional' cases." *Jordan v. Multnomah Cnty.*, 815 F.2d 1258, 1262 (9th Cir. 1987) (quoting *Del. Valley*, 478 U.S. at 565).

After determining the lodestar amount, the court may in its discretion, adjust the amount pursuant to a variety of factors. *City of Riverside v. Rivera*, 477 U.S. 561, 569 (1986) ("(1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases."); *accord Gonzalez v. City of Maywood*, 729 F.3d 1196, 1209 (9th Cir. 2013); *see also Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) ("We reemphasize that the district court has discretion in determining the amount of a fee award.").

### B.     *The University's Lodestar Figure is Reasonable*

The court begins its calculation by finding that the University's discounted hourly rate of $250.00 per hour is reasonable. The controlling test for determining a reasonable hourly rate requires the rate to be "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum v. Stenson*, 465 U.S. 886, 896 n. 11 (1984) (holding that the reasonable rate to apply under section 1988 is the rate commonly charged in the local legal community); *Welch v. Metro. Life Ins Co.*, 480 F.3d 942, 946 (9th Cir. 2007). "[N]ormally the relevant

legal community for determining the prevailing market rates for attorney's fees is the community in which the forum is situated." *Gates v. Deukmejian*, 987 F.2d 1392, 1405 (9th Cir. 1993).

Here, the relevant community is Las Vegas, Nevada. In Las Vegas, a discounted $250.00 hourly rate is reasonable. *See, e.g.*, *Marrocco v. Hill*, 291 F.R.D. 586, 589 (D. Nev. 2013) (finding hourly rates between $375.00 and $400.00 reasonable in Las Vegas); *Snow v. McDaniel*, No. 3:08–cv–00046–RCJ–VPC, 2014 WL 590489, at *1 (D. Nev. Feb. 14, 2014) (Jones, J.) (finding a $250.00 hourly rate reasonably within the context of a section 1988 inquiry); *see also Gibbs v. Rivers Transp. Group, Inc*., No. 2:13–cv–00935–JAD–NJK, 2014 WL 204928, at *3 (D. Nev. Jan. 17, 2014) (finding a $250.00 hourly rate reasonable in Las Vegas); *Conboy v. Wynn Las Vegas, LLC*, No. 2:11–cv–01649–JCM–CWH, 2012 WL 6100313, at *3 (D. Nev. Dec. 7, 2012) (same); *Am. Gen. Life Ins. Co. v. Futrell*, No. 2:11–cv–00977–PMP–CWH, 2012 WL 5497901, at *3 (D. Nev. Nov. 13, 2012) (finding hourly rates between $250.00 and $400.00 reasonable in Las Vegas).

The court also finds that this rate is reasonable even though the University's in-house counsel litigated the action. *See Stenson*, 465 U.S. at 894–95 ("It is also clear from the legislative history that Congress did not intend the calculation of fee awards to vary depending on whether plaintiff was represented by private counsel or by a nonprofit legal services organization.").

Gamage contends that the University's fees are unreasonable because "Defendants argue that this entire case was frivolous" while "also claim[ing] that the case was complex to require an astounding 266.00 hours" of work. (Gamage Opp'n (#66) at 10:14–17). This argument is unpersuasive. The mere fact that a case, like Gamage's, is frivolous does not mean that marshalling a legal defense is quick and easy. On the contrary, the University persuasively argues that it's expenses are attributable, in part, to Gamage's frivolous "allegations of conspiracy [and] lying . . . which required Defendants to constantly correct and clarify the misstatements of the record." (Def.'s Atty. Fees Mot. (#57) at 14:22–28).

The University's position resonates with the court. Despite the fact that the University has prevailed on the merits of Gamage's action, The Bach Law Firm continues to argue that "Plaintiff was falsely accused of plagiarism by her graduate committee. The student conduct officer denied her an opportunity to defend against the allegations of plagiarism by forcing her to accept responsibility for academic misconduct." (The Bach Law Firm's Opp'n (#67) at 6:23–27). This false statement exemplifies the type of baseless allegations that needlessly prolonged proceedings and increased the University's legal fees.

Additionally, as discussed above, a "strong presumption" exists that the lodestar figure represents a reasonable fee. *Jordan*, 815 F.2d at 1262. Neither Gamage nor The Bach Law Firm identified any persuasive reason as to why the lodestar amount should be adjusted. Rather, Gamage merely makes boilerplate objections and conclusory arguments that the University's time entries "are simply inflated for the apparent purpose of seeking a greater award of attorney fees." (Gamage Opp'n (#66) at 10:19–21). The court is unmoved by Gamage's conclusory assertions.

### C.    The University should Recover Attorney's Fees Incurred after December 31, 2012

Having determined that the University's hourly rate is reasonable, the court must now recommend a date at which the University is entitled to attorney's fees under *Fox v. Vice's* but-for test. As discussed above, Section 1988 permits prevailing defendants to receive the portion of his attorney's fees that he would not have paid but for the frivolous claim. *Fox*, 131 S.Ct. at 2215. Here, three dates suggest themselves as possible candidates marking the point at which Gamage's claim became frivolous: (1) April 25, 2012, when Gamage rejected the University's offer of judgment; (2) January 1, 2013, two weeks after Gamage's deposition; and (3) January 17, 2013, when the University completed its motion for summary judgment. Each option is discussed below.

26

### 1.      April 25, 2012

The University requests $61,805.00 in attorney's fees. (Def.'s Mot. (#57) at 29:16–17, 30:12). This represents the lodestar amount for the period between April 25, 2012, when Gamage rejected the University's offer of judgment, and January 24, 2014, when the Clerk of Court entered Judgment against Gamage. (*Id.*) Neither Gamage nor The Bach Law Firm suggested alternative amounts. (*See generally* #66, #67).

The University's request for $61,805.00 is not without merit. Before Gamage had even filed her complaint, The Bach Law Firm had fully litigated three virtually identical cases with no success: *Lucey*, 380 Fed. Appx. 608, *Krainski*, 616 F.3d 963, and *Maffeo*, 461 Fed. Appx. 629. *Krainski* and *Maffeo* represent two of the most damaging precedents governing Gamage's action. In *Krainski*, The Bach Law Firm conceded on the record that the University is shielded by the Eleventh Amendment. *Id*. In *Maffeo*, the Ninth Circuit dubbed The Bach Law Firm's arguments "frivolous." Judge Navarro has not overlooked these facts. During the court's September 30, 2013, the court noted that the University cited *Krainski* and unequivocally stated that Gamage failed to explain what distinction "the Court should draw between the *Krainski* case and this case, to allow the Eleventh Amendment not to bar this particular case." (Hearing Trans. (#52) at 12:4–7). These facts provide a reasonably sufficient basis for awarding attorney's fees as of April 25, 2012.

### 2.      January 1, 2013

Nonetheless, the court recommends imposing attorney's fees that accrued after December 31, 2012, which was approximately two weeks after Gamage's deposition, and the point at which it became indisputable that Gamage's action is legally and factually baseless.

During Gamage's deposition, she admitted, *inter alia*, that she was (1) given a hearing, (2) an opportunity to respond, and (3) an opportunity to bring an advisor. (Gamage Depo. (#30) Exhibit D at

68:8–17, 66:21–23). Gamage's deposition also revealed that she (1) admitted to plagiarizing, (*id.* at 65:23–66:4), (2) suffered no harm as a result of the University's conduct, (*id.* at 84:16–85:14, 86:4–5; 87:2–3, 87:5–9, 91:22–25), and (3) had no basis for a breach of contract claim (*id.* at 89:16–25). Gamage's admission of these facts makes it indisputable that continuation of her action was meritless. *See Girardi*, 611 F.3d at 1064 (citing *Edwards*, 153 F.3d at 247 (affirming section 1927 sanctions for the "willful continuation of a suit known to be meritless"). Additionally, awarding attorney fees as of this date clearly satisfies *Fox's* but-for test and guarantees that the court is not engaging in the type of post hoc reasoning prohibited under *Christiansburg*, 434 U.S. at 421–22.

Calculating the University's fees from January 18, 2013 forward yields $39,962.50 in attorney's fees that are directly traceable to Gamage's continuation of a meritless action. This lodestar amount is presumptively reasonable. *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992) ("We have established a 'strong presumption' that the lodestar represents the 'reasonable' fee[.]"); *Gonzalez*, 729 F.3d at 1202 ("The product of this computation—the 'lodestar figure'—is a "presumptively reasonable" fee under 42 U.S.C. § 1988."). The court sees no reason why the lodestar amount should be adjusted according to the factors set out in *Rivera*, 477 U.S. at 569. *See Jordan*, 815 F.2d at 1262 (quoting *Del. Valley*, 478 U.S. at 565) (stating that the lodestar amount should only be adjusted in "rare" circumstances). Therefore, the court recommends awarding the University $39,962.50 in attorney's fees.

### 3.    January 17, 2013

Alternatively, the court would—but does not—recommend imposing attorney's fees that accrued after January 17, 2013. On January 17, 2013, the University's motion for summary judgment and supporting exhibits was completed and submitted to the court. Accordingly, this date marks the point at which the University established in the record exactly why Gamage's action was frivolous. The

University's motion should have extinguished any hope regarding the merit of Gamage's claims. If the court imposed attorney's fees that accrued after this date, the University would be awarded $28,137.50.

**IV.** **Miscellaneous Matters**

Finally, the court briefly addresses several miscellaneous matters: the University's request for (1) attorney's fees under NEV. REV. STAT. § 18.010(b)(2); (2) costs pursuant to Federal Rule of Civil Procedure 54; (3) interest on costs pursuant to NEV. REV. STAT. § 17.130(1); and (4) attorney's fees, costs, and interest on the judgment under Nevada's offer of judgment rule.[35] The court also discusses its decision to not defer ruling on the University's motion. Each is discussed below.

**A.** *Attorney's Fees under Section 18.010(2)(b)*

In addition to moving for attorney's fees under sections 1988(b) and 1927, the University also moves for attorney's fees pursuant to section 18.010(2)(b). Section 18.010(2)(b) permits an award of attorney's fees when a claim or defense "was brought or maintained without reasonable ground or to harass the prevailing party." NEV. REV. STAT. § 18.010(2)(b). This section is to be liberally construed in order to "punish . . and deter frivolous or vexations claims." *Id*. Under section 18.010(2)(b), a claim is frivolous if it is not well-grounded in fact or supported by existing law. *Simonian v. Univ. & Cmty. Coll. Sys.*, 122 Nev. 187, 196, 128 P.3d. 1057, 1063–65 (2006). A claim is groundless, if the allegations of the complaint are not supported by any credible evidence. *Allianz Ins. Co. v. Gagnon*, 109 Nev. 990, 995–96, 860 P.2d (1993) 720, 724. (citation omitted).

The University has satisfied its burden of demonstrating that it is entitled to attorney's fees under section 18.010(2)(b). Section 18.010(2)(b)'s language mirror sections 1988(b) and 1927. Accordingly, it is unnecessary for the court to engage in an independent inquiry under section 18.010(2)(b). The court

---

[35] The University correctly abstained from moving for costs under Federal Rule of Civil Procedure 68. *See Delta Air Lines v. August*, 450 U.S. 346, 352 (1981) ("[Rule 68] is simply inapplicable to this case because it was the defendant that obtained the judgment.").

29

notes that because Gamage's state law and federal claims arise from the same transaction and occurrence, all of Gamage's claims became frivolous at the same time (i.e., on January 1, 2013). Therefore, awarding attorney's fees under section 18.010(2)(b) merely provides an alternative basis for the same award: attorney's fees in the amount of $39,962.50.

**B.** *Costs under Federal Rule of Civil Procedure 54*

"[C]osts—other than attorney's fees—should be allowed to the prevailing party." FED. R. CIV. P. 54(d)(1). On January 23, 2014, the University filed its bill of costs (#56). Pursuant to Rule 54(d)(1), the clerk of court waited twenty-two days before taxing the University's costs in the amount of $2,200.75 (#59). Neither Gamage nor The Bach Law Firm objected. Now, the University moves for taxable and non-taxable costs in the amount of $2,200.75. (*See* Def.'s Mot. (#57) at 19:5–8. The the University's nontaxable total $615.75, (*see* Def.'s Atty. Fees Mot. (#57) at 13:26–28), which includes expenses for a hearing transcript, runner services, and postage fees, which were already taxed. (*See* Doc. #59). Because the clerk of court has already awarded the University complete costs in the amount of $2,200.75, this request is denied as moot.

**C.** *Interest on Costs under Nevada Revised Statute 17.130*

Under section 17.130, prejudgment interest is recoverable on judgments awarding costs. *Albios v. Horizon Cmty., Inc.* 122 Nev. 409, 429, 132 P.3d 1022, 1035 (2006) (citing *Gibellini v. Klindt*, 110 Nev. 1201, 1209, 885 P.2d 540, 544 (1994)). Prejudgment interest runs on costs from the time when the costs were incurred. *Id*. Therefore, the recovering party must prove when the costs were incurred and, if the party fails to do so, interest on the costs is awarded only from date of the judgment. *Id*. The applicable interest rate is governed by section 17.130(2), which sets the rate at the prime rate (i.e., 3.25%) plus two percent.

On January 23, 2014, the University filed a bill of costs in the amount of $2,002.75 (#56). The clerk of court taxed this amount twenty-two days later (#59). The University's receipts and bills, which are attached to its bill of costs, adequately proves when and how the costs were incurred. Therefore, the court recommends awarding the University interest on costs in the amount of $90.96. (*See* Def.'s Reply (#73) at 13:6) (requesting $90.96 in interest on costs under section 17.130(1)).

### D.   *Attorney's Fees, Costs & Interest under Nevada's Offer of Judgment Rule*

Under Nevada Rule of Civil Procedure 68(f) and Nevada Revised Statute § 17.115, a party may recovery attorney's fees, costs, and interest of the opposing party rejects an offer of judgment and fails to obtain a more favorable outcome. A party who succeeds on a motion for summary judgment is considered a prevailing party for these purposes. *See U.S. Design & Constr. v. I.B.E.W. Local 357*, 118 Nev. 458, 464–65, 50 P.3d 170, 173–74 (2002). The purpose of the offer of judgment rule is to promote and encourage the settlement of lawsuits and save money for the court system, the parties, and the taxpayers. *Muihe v. A.N. Las Vegas Cab Co.*, 106 Nev. 664, 667, 799 P.2d 559, 561 (1990).

Under this rule, post-offer costs and payment of interest on the judgment are mandatory. *See* Nev. R. Civ. P. 68(f)(2) ("the offeree shall pay the offeror's post-offer costs, applicable interest on the judgment from the time of the offer to the time of entry of the judgment"). By contrast, awards of attorney's fees are discretionary. *See id.* (the offeree shall pay . . . reasonable attorney's fees, if any are allowed"); Nev. Rev. Stat. § 17.115(4)(d)(3) (stating that the court "may order" the payment of "[r]easonable attorney's fees").

When deciding whether to award penalties under the offer of judgment rule, the court's discretion is governed by the *Beattie* factors: "(1) whether the plaintiffs claim was brought in good faith; (2) whether the defendants' offer of judgment was reasonable and in good faith in both its timing and amount; (3) whether the plaintiff's decision to reject the offer . . . was grossly unreasonable or in bad

faith; and (4) whether the fees sought by the offeror are reasonable and justified in amount." *Beattie v. Thomas*, 99 Nev. 579, 588, 668 P.2d 268, 247 (1983). No one Beattie factor is dispositive; and the court need not make explicit findings as to all of the factors. *Nat'l Union Fire Ins. v. Pratt and Whitney*, 107 Nev. 535, 543–44, 815 P.2d 601, 606 (1991).

Here, the court declines to award attorney's fees from the date that the University made an offer of judgment. Although the University's offer of judgment was reasonable and brought in good faith, it was not indisputable that Gamage's action was legally and factually baseless until after her deposition. (*See supra* § III.C.2). Accordingly, the court cannot conclude that Gamage's decision to reject the offer of judgment on April 25, 2012 was "grossly unreasonable." *Beattie*, 99 Nev. at 588, 668 P.2d at 247; (*See supra* § III.C.2.1) (declining to impose attorney's fees as of April 25, 2012, because it was not indisputably that Gamage's action was baseless on that date).

However, the court reaches a different conclusion with regard to costs and interest on the judgment. Under Nevada Rule 68(f)(2), it is mandatory for the court to award these penalties. *See* NEV. R. CIV. P. 68(f)(2). As a result, the court recommends awarding interest on the judgment in the amount of $3,661.06.[36] Additionally, the court reiterates its recommendation above that the University is entitled to costs in the amount of $2,200.75.[37] However, because the clerk of court has already awarded the University complete costs in the amount of $2,200.75, this request is denied as moot.

---

[36] This figure was reached using the University's recommended judgment of $39,962.50 in attorney's fees multiplied by the statutory interest rate of 5.25% and the number of days between the offer of judgment, April 25, 2014, and the entry of summary judgment, January 21, 2014, which is 637days. *See* NEV. REV. STAT. § 17.130(2) (setting the rate at the prime rate (i.e., 3.25%) plus two percent).

[37] Gamage argues that the University's offer of judgment was invalid because it was not appropriately served. (*See* Gamage Opp'n (#66) at 7:16). Without addressing the legal merits of this argument, the court merely notes that proof of service is attached to the University's bill of costs. (*See* Doc. (#56-1) at 6).

**E.** *Deferring Ruling on the University's Motion would cause Undue Delay*

Finally, Gamage and The Bach Law Firm argue that the court should defer ruling on the University's motion under Gamage's appeal is adjudicated should be denied. The basic premise of federal practice directs the court "to secure the just, speedy, and inexpensive determination of every action and proceeding." FED. R. CIV. P. 1. Towards this end, the Ninth Circuit expressly permits the district court to retain jurisdiction to consider a motion for attorney's fees "when the relevant circumstances [are still] fresh in the mind of the district judge." *Masalosalo v. Stonewall Ins. Co.*, 718 F.2d 955, 956 (9th Cir. 1983) (citations omitted). The panel also noted that if the district court rules on the fees motion, the losing party may file an appeal from the district court's order on the motion for attorney's fees and have that appeal consolidated with the appeal on the merits.

Here, judicial economy is best served by ruling on the University's motion now and affording Gamage and The Bach Law Firm, if they choose to appeal this order, an opportunity to consolidate that appeal with their appeal of Judge Navarro's summary judgment order.

ACCORDINGLY, and for good cause shown,

IT IS RECOMMENDED that the University's motion for attorney's fees (#57) be GRANTED in part and DENIED in part, as outlined below.

### I.  ATTORNEY'S FEES & INTEREST ON THE JUDGMENT

IT IS FURTHER RECOMMENDED that the University be AWARDED $39,962.50 in ATTORNEY'S FEES.

IT IS FURTHER RECOMMENDED that the University's be AWARDED $3,661.06 in INTEREST ON THE JUDGMENT from the date the offer of judgment expired.

33

IT IS FURTHER RECOMMENDED that GAMAGE, THE BACH LAW FIRM, and JASON BACH be held JOINTLY AND SEVERALLY LIABLE for ATTORNEY'S FEES and INTEREST ON THE JUDGMENT.

**THEREFORE**, IT IS RECOMMENDED that JUDGMENT be entered against GAMAGE, THE BACH LAW FIRM, and JASON BACH, JOINTLY AND SEVERALLY, in the amount of **$43,623.56**, for ATTORNEY'S FEES and INTEREST ON THE JUDGMENT.

## II.   COSTS & INTEREST ON COSTS

IT IS FURTHER RECOMMENDED that the University's request for COSTS be DENIED as MOOT.

IT IS FURTHER RECOMMENDED that the University be AWARDED $90.96 in INTEREST ON COSTS already taxed by the Clerk of Court.

**THEREFORE**, IT IS RECOMMENDED that JUDGMENT be entered against GAMAGE INDIVIDUALLY for COSTS ALREADY TAXED and INTEREST ON COSTS ALREADY TAXED in the amount of **$2,291.71**.

IT IS SO RECOMMENDED.

DATED this 16th day of April, 2014.

_____
CAM FERENBACH
UNITED STATES MAGISTRATE JUDGE

34